1   XAVIER BECERRA
    Attorney General of California
2   MICHAEL L. NEWMAN
    Senior Assistant Attorney General
3   CHEROKEE DM MELTON
    Supervising Deputy Attorney General
4   JENNIFER C. BONILLA
    LISA CISNEROS
5   KATHERINE LEHE
    ANNA RICH
6   ANITA GARCIA VELASCO
    BRENDA AYON VERDUZCO
7   JULIA HARUMI MASS, State Bar No. 189649
    Deputy Attorney General
8    1515 Clay Street, 20th Floor
     P.O. Box 70550
9    Oakland, CA  94612-0550
     Telephone:  (510) 879-3300
10   Fax:  (510) 622-2270
     E-mail:  Julia.Mass@doj.ca.gov
11  *Attorneys for Plaintiff State of California*

12  *Additional Counsel Listed on Signature Page*

13              IN THE UNITED STATES DISTRICT COURT

14            FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16

17

18  **STATE OF CALIFORNIA, et al.,**          Case No. 4:19-cv-04975-PJH

19                              Plaintiffs,   **PLAINTIFFS' NOTICE OF MOTION
                                              AND MOTION TO COMPEL
20           v.                               COMPLETION OF THE
                                              ADMINISTRATIVE RECORD AND
21                                            REQUEST FOR LEAVE TO SERVE
    **U.S. DEPARTMENT OF HOMELAND SECURITY,** DISCOVERY; MEMORANDUM OF
22  et al.,                                   POINTS AND AUTHORITIES IN
                                              SUPPORT**
23                              Defendants.
                                              Date:        March 4, 2020
24                                            Time:        9:00 a.m.
                                              Courtroom:   3
25                                            Judge:       Hon. Phyllis J. Hamilton
                                              Trial Date:  None set
26                                            Action Filed: August 16, 2019

27

28

**NOTICE OF MOTION AND MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND REQUEST FOR LEAVE TO SERVE DISCOVERY**

TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 4, 2020, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs the State of California, State of Oregon, Commonwealth of Pennsylvania, and District of Columbia will and hereby do move for an order compelling completion of the administrative record and providing leave to serve discovery.

This Motion is made following a conference of counsel, which took place telephonically on January 22 and January 27, 2020.  As explained in detail below, this motion asks that the Court order Defendants to complete the administrative record to include policies, procedures, forms and guidance related to the application of the public charge ground of inadmissibility and other procedures implicated by the Rule that were in place prior to the Rule's issuance; the U.S. Citizenship and Immigration Services article, *Public Charge Provisions of Immigration Law: A Brief Historical Background*, and all data the article references; inter- and intra-agency communications related to the Rule, including records related to the process of developing forms related to public charge determinations and estimations explained in the Rule's Regulatory Impact Analysis; and White House and other external communications to the Agency related to the Rule.  In addition, Plaintiffs request that the Court allow them to take discovery in support of their equal protection claims following Defendants' completion of the administrative record.

This motion is based on this notice, the Memorandum of Points and Authorities and Declaration of Lisa Cisneros filed herewith, this Court's file, and any matters properly before the Court.

1

Pltfs' Mot to Compel Completion of the Administrative Record and Request for Leave to Serve Discovery (Case No. 4:19-cv-04975-PJH)

1    Dated:  January 29, 2020                    Respectfully Submitted,

2                                                XAVIER BECERRA
                                                 Attorney General of California
3                                                MICHAEL L. NEWMAN
                                                 Senior Assistant Attorney General
4                                                CHEROKEE DM MELTON
                                                 Supervising Deputy Attorney General
5                                                JENNIFER C. BONILLA
                                                 LISA CISNEROS
6                                                KATHERINE LEHE
                                                 ANNA RICH
7                                                ANITA GARCIA VELASCO
                                                 BRENDA AYON VERDUZCO

8

9

10                                                  _/s/ Julia Harumi Mass_____
                                                 JULIA HARUMI MASS
11                                               Deputy Attorney General
                                                 *Attorneys for Plaintiff State of California*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            2

# TABLE OF CONTENTS

**Page**

I.    MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE
      RECORD ........................................................................................... 2

      A.    Legal Standard ......................................................................... 2

      B.    Background ............................................................................... 3

      C.    Argument ................................................................................... 4

            1.    The Administrative Record Is Missing Policy and Guidance
                  Documents Relevant to the Rule.............................................. 5

            2.    Data and Analysis Regarding the Historic Application of the
                  Public Charge Statute Are Missing from the Administrative
                  Record ...................................................................................... 7

            3.    Defendants Have Improperly Excluded All Materials They
                  Believe Are Covered by the Deliberative Process Privilege........... 9

II.   REQUEST FOR LEAVE TO SERVE DISCOVERY ......................................... 12

      A.    Plaintiff States' Equal Protection Claim Requires a Fact-Sensitive
            Inquiry ..................................................................................... 13

      B.    Discovery Is Appropriate Where Constitutional Claims Subject to
            Searching Judicial Scrutiny Rely on Evidence Outside the
            Administrative Record ............................................................. 15

            1.    Plaintiffs Seek Discovery of Information Outside the
                  Administrative Record .............................................................. 16

            2.    Discovery Is Appropriate for Plaintiffs' Equal Protection
                  Claim Based on Racial Animus ................................................ 17

            3.    Discovery May Follow Completion of the Administrative
                  Record ...................................................................................... 18

CONCLUSION ............................................................................................... 19

i

Pltfs' Mot to Compel Completion of the Administrative Record and
Request for Leave to Serve Discovery (Case No. 4:19-cv-04975-PJH)

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Arce v. Douglas*
   793 F.3d 968 (9th Cir. 2015)................................................................................15

*Bellion Spirits, LLC v. United States*
   335 F.Supp.3d 32 (D.D.C. 2018) .......................................................................16

*Bunker Hill Co. v. Envtl. Prot. Agency*
   572 F.2d 1286 (9th Cir. 1977)..............................................................................8

*Chiayu Chang v. U.S. Citizenship & Immigration Servs*
   254 F. Supp. 3d 160 (D.D.C. 2017) ...................................................................17

*Citizens to Pres. Overton Park v. Volpe*
   401 U.S. 402 (1971) ..............................................................................................4

*City of Richmond v. J.A. Croson Co.*
   488 U.S. 469 (1989) ............................................................................................16

*Ctr. for Envtl. Health v. Perdue*
   No. 18-cv-01763-RS, 2019 WL 3852493 (N.D. Cal. May 6, 2019).......................11

*Dep't of Commerce v. N.Y.*
   139 S. Ct. 2551 (2019) ......................................................................................3, 5

*Desert Survivors v. U.S. Dep't of the Interior*
   231 F. Supp. 3d 368 (N.D. Cal. 2017) ...............................................................10

*Exxon Corp. v. Dep't of Energy*
   91 F.R.D. 26 (N.D. Tex. 1981) .............................................................................5

*Fed. Trade Comm'n v. Warner*
   742 F.2d 1156 (9th Cir. 1984)........................................................................10, 11

*Grill v. Quinn*
   No. CIV S–10–0757 GEB GGH PS, 2012 WL 174873 (E.D. Cal. Jan. 20,
   2012) ...............................................................................................................15, 16

*In re Sealed Case*
   121 F.3d 729 (D.C. Cir. 1997) ...........................................................................10

*In re United States*
   875 F.3d 1200 (9th Cir. 2017)......................................................................2, 5, 11

ii

Pltfs' Mot to Compel Completion of the Administrative Record and
Request for Leave to Serve Discovery (Case No. 4:19-cv-04975-PJH)

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Inst. for Fisheries Res. v. Burwell*
No. 16-cv-01574-VC, 2017 WL 89003 (N.D. Cal Jan. 10, 2017)............................................10

4

5

*Kisor v. Wilkie*
139 S.Ct. 2400 (2019) ...........................................................................................................18

6

*Landis v. N. Am. Co.*
299 U.S. 248 (1936)................................................................................................................18

7

8

*Make the Road New York et al. v. Cuccinelli et al.*
No. 19–cv-7993 (GBD), (S.D.N.Y.) ......................................................................................15

9

*Mayor & City Council of Balt. v. Trump*
No. ELH-18-3636, 2019 WL 6970631 (D. Md. 2019) .........................................................17

10

11

*McCrary v. Guttierez*
495 F. Supp. 2d 1038 (N.D. Cal. 2007) ...................................................................................2

12

13

*Modesto Irrigation Dist. v. Gutierrez*
No. 1:06-cv-00453 OWW DLB, 2007 WL 763370 (E.D. Cal. Mar. 9, 2007) ......................10

14

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*
463 U.S. 29 (1983)...................................................................................................................8

15

16

*N. Pacifica LLC v. City of Pacifica*
274 F. Supp. 2d 1118 (N.D. Cal. 2003) .................................................................................10

17

18

*Nat. Res. Def. Council v. Train*
519 F.2d 287 (D.C. Cir. 1975) .................................................................................................8

19

*Nat'l Audubon Soc'y v. U.S. Forest Serv.*
46 F.3d 1437 (9th Cir. 1993)....................................................................................................3

20

21

*People ex rel. Lockyer v. U.S. Dep't of Agric.*
No. C05-03508 EDL, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006) ..................................5, 10

22

23

*Pub. Power Council v. Johnson*
674 F.2d 791 (9th Cir. 2013).............................................................................................4, 6, 8

24

*Puerto Rico Pub. Hous. Admin v. U.S. Dep't of Hous. & Urban Dev.*
59 F.Supp. 2d 310 (D.P.R. 1999).......................................................................................15, 16

25

26

*Romer v. Evans*
517 U.S. 620 (1996)................................................................................................................18

27

28

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Rydeen v. Quigg*
748 F.Supp. 900 (D.D.C. 1990) ...................................................................15, 18

*Saget v. Trump*
375 F.Supp.3d 280, 368 (E.D.N.Y. 2019) ...............................................16

*Sierra Club v. Zinke*
No. 17-cv-07187-WHO, 2018 WL 3126401 (N.D. Cal. June 26, 2018) ...................10

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*
100 F.3d 1443 (9th Cir. 1996) .........................................................2, 5

*Thompson v. U.S. Dep't of Labor*
885 F.2d 551 (9th Cir. 1989) ...................................................... *passim*

*Tornay v. United States*
840 F.2d 1424 (9th Cir. 1988) ..................................................................11

*Trump v. Haw.*
138 S. Ct. 2392 (2018) ................................................................17

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*
429 U.S. 252 (1977) ........................................................13, 14, 17, 18

STATUTES

5 United States Code
§ 706..........................................................................1, 2, 4

8 United States Code
§ 1182(a)(4)................................................................1

CONSTITUTIONAL PROVISIONS

U.S. Constitution Fifth Amendment Due Process Clause .........................................1, 16

COURT RULES

Federal Rules of Civil Procedure
Rule 26(b)(1).............................................................12

Rule 30(b)(6).............................................................17

iv

# TABLE OF AUTHORITIES
**(continued)**

**Page**

**REGULATIONS**

8 Code of Federal Regulations
  § 103.2(a)(1)..................................................................................................................9

**OTHER AUTHORITIES**

https://www.cand.uscourts.gov/wp-content/uploads/judges/ryu-dmr/DMR-
  STANDING-ORDER.pdf ..............................................................................................12

*Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292
  (Aug. 14, 2019) ...................................................................................................... *passim*

*Inadmissibility on Public Charge Grounds; Correction*, 84 Fed. Reg 52,357
  (Oct. 2, 2019) ................................................................................................................14

v

Pltfs' Mot to Compel Completion of the Administrative Record and
Request for Leave to Serve Discovery (Case No. 4:19-cv-04975-PJH)

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

The State of California, State of Oregon, Commonwealth of Pennsylvania, and District of

3

Columbia (Plaintiffs or Plaintiff States) bring this action to challenge the U.S. Department of

4

Homeland Security's (DHS) promulgation of *Inadmissibility on Public Charge Grounds*, 84 Fed.

5

Reg. 41,292 (Aug. 14, 2019) (Rule).  The Rule redefines the term "public charge," drastically

6

expanding the grounds on which immigrants may be excluded or denied adjustment of status

7

based on a perceived "likelihood of becoming a public charge," under 8 U.S.C. § 1182(a)(4).

8

Plaintiff States challenge the Rule as arbitrary, capricious and not in accordance with law, as well

9

as short of statutory right under the Administrative Procedure Act (APA), 5 U.S.C. § 706.

10

Plaintiff States also allege the Rule was motivated by racial animus and animus against a

11

politically disfavored group in violation of the equal protection component of the Due Process

12

Clause of the Fifth Amendment to the U.S. Constitution.  Plaintiffs bring this motion for two

13

reasons: (1) to ensure the Court has before it the "whole record" as required when reviewing the

14

merits of Plaintiff States' APA claims, and (2) to establish Plaintiff States' entitlement to

15

discovery in support of their equal protection claim.

16

As to the APA claims, Defendants have certified an administrative record (Record) that is

17

plainly inadequate and must be completed.  Defendants have withheld policies and guidance

18

detailing how DHS and its component parts (Agency) and the Department of State administered

19

the public charge ground of inadmissibility prior to the Rule—documents that were before the

20

Agency and are critical to the Court's evaluation of how the Rule departs from prior policy and

21

practice.  In addition, the Record does not contain data and analysis regarding the prior

22

application of the public charge rule by the Agency or the Department of State, even though the

23

Agency, through U.S. Citizenship and Immigration Services (USCIS), published an article

24

analyzing the historical application of public charge the same day the new Rule was promulgated

25

with the conclusory assertion that the Rule is consistent with "historical practice."  84 Fed. Reg.

26

at 41,347.  Defendants have also improperly withheld materials considered by the Agency—

27

including interagency comments on the Rule—on the ground they are subject to the deliberative

28

process privilege.  Given the many provisions of the Rule that are inexplicably at odds with the

1

1   evidence before the Agency, it is critical that the parties and the Court have access to the entire

2   Record, and—consistent with practice in the Northern District of California—Defendants should

3   be ordered to produce a privilege log for any materials withheld based on an asserted privilege.

4       In addition, Plaintiffs seek discovery of information and material relevant to their equal

5   protection claim that is outside the Record.  Because Plaintiffs' equal protection claims are

6   entitled to searching judicial scrutiny of facts not contained in the Record, Plaintiffs should be

7   afforded an opportunity to conduct discovery.

8   I.   **MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE
9        RECORD**

10      A.   **Legal Standard**

11      The APA provides that judicial review of agency decisions is based on court review of "the

12  whole record or those parts of it cited by a party."  5 U.S.C. § 706.  "The whole administrative

13  record . . . consists of all documents and materials directly or *indirectly* considered by agency

14  decision-makers and includes evidence contrary to the agency's position."  *Thompson v. U.S.*

15  *Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal quotation marks and citation omitted).

16  Although agencies are entitled to a "presumption of administrative regularity," courts may order

17  completion of the record, consider extra-record evidence, and order limited discovery in response

18  to well-established exceptions.  *McCrary v. Guttierez*, 495 F. Supp. 2d 1038, 1041-42 (N.D. Cal.

19  2007).  Where plaintiffs present "clear evidence" that the record as produced is missing materials

20  that were "before the agency" in the rulemaking process, it is proper for the district court to order

21  completion of the record.  *In re United States*, 875 F.3d 1200, 12005-06 (9th Cir. 2017), *vacated*

22  *on other grounds*, 138 S. Ct. 443 (2017); *Thompson*, 885 F.2d at 556.

23      In addition, a court may consider extra-record evidence and allow discovery "(1) if

24  necessary to determine 'whether the agency has considered all relevant factors and has explained

25  its decision,' (2) 'when the agency has relied on documents not in the record,' . . . (3) 'when

26  supplementing the record is necessary to explain technical terms or complex subject matter,'" or

27  (4) "when plaintiffs make a showing of agency bad faith" or improper behavior.  *Sw. Ctr. for*

28  *Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) quoting *Inland*

2

1   *Empire Pub. Lands Council v. Glickman*, 88 F.3d 697, 703-04 (9th Cir. 1996) (internal citation

2   omitted) and *Nat'l Audubon Soc'y v. U.S. Forest Serv.*, 46 F.3d 1437, 1447 n.9 (9th Cir. 1993);

3   *Dep't of Commerce v. N.Y.*, 139 S. Ct. 2551, 2573-74 (2019) (recognizing exception to general

4   rule against discovery into "the mental processes of administrative decisionmakers" for strong

5   showing of "bad faith or improper behavior") (quoting *Citizens to Pres. Overton Park v. Volpe*,

6   401 U.S. 402, 420 (1971)).

7       **B.    Background**

8       On November 25, 2019, the Acting Chief for the Office of Privacy and Strategy for USCIS

9   and DHS certified an administrative record for the Final Rule on the Public Charge Ground of

10  Inadmissibility.  Declaration of Lisa Cisneros (Cisneros Decl.) ¶¶ 2-3, Ex. 1.  In their review,

11  Plaintiffs discovered several gaps in the Record.  Through correspondence initiated January 9,

12  2020, Plaintiffs informed Defendants of several categories of documents that Plaintiffs believe are

13  missing from the record.  Cisneros Decl. ¶¶ 4-6, Exs. 2-4.  Plaintiffs identified the following

14  categories of missing materials:

15      •    Complete, unredacted copies of all policies, procedures, forms and guidance
16           related to the application of the public charge ground of inadmissibility or any
             other aspect of the Rule or previous drafts of the Rule;

17      •    The USCIS article, *Public Charge Provisions of Immigration Law: A Brief
18           Historical Background*, dated August 14, 2019, and all data the article references,
             including Immigration and Naturalization Service (INS), DHS, and Department of
19           State consular processing statistics related to public charge determinations;

20      •    Inter- and intra-agency communications and Agency communications with outside
             organizations related to the Rule, including records related to the Agency's
21           development of forms related to public charge determinations and estimates
             regarding the burdensomeness of forms;

22      •    White House communications to the Agency related to the Rule;

23      •    Information and data related to legal permanent residents who may undergo a
24           public charge inadmissibility determination upon return from trips abroad;

25      •    Missing comments from the public; and

26      •    Correct, contemporaneous copies of websites included in the Record.

27  The parties met and conferred by telephone on January 22 and 27, and Defendants agreed to

28  produce one portion of a policy manual in response to Plaintiffs' letter.  Cisneros Decl. ¶¶ 5, 8.

3

1   The parties failed to reach agreement with respect to Plaintiffs' request that the record include

2   unredacted, internal versions copies of the relevant portions of the USCIS Policy Manual,

3   Adjudicator's Field Manual, and other relevant Agency policies; USCIS article, *Public Charge*

4   *Provisions of Immigration Law: A Brief Historical Background*, dated August 14, 2019, and data

5   referenced therein; intra- and inter-agency materials the Agency believes are protected from

6   disclosure by the deliberative process privilege, including any materials related to the

7   development of forms through which applicants will provide information relevant to the public

8   charge determination; communications from organizations and individuals outside the federal

9   government other than comment letters submitted through the notice-and-comment process and

10  through meetings with the Office of Management and Budget; communications with the White

11  House.[1]  *Id.* ¶¶ 9-11.  Plaintiffs also sought—and have not yet received—an explanation of the

12  Record sufficient to confirm that all non-duplicative comment letters have been included.

13  Defendants have agreed to provide such an explanation and add any missing comment letters to

14  the Record if any are found to be missing.  Cisneros Decl. ¶ 12.[2]

15      **C.   Argument**

16      Consistent with the APA's directive that judicial review of agency action be based on the

17  "whole record" that was before the decision-maker, a wellestablished basis for ordering discovery

18  or supplementation of an agency record exists when "it appears the agency has relied on

19  documents or materials not included in the record."  5 U.S.C. § 706 (review based on "whole

20  record"); *Pub. Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 2013) (exception

21  acknowledged to be an "explication of the rule that judicial review is based upon the full

22  administrative record in existence at the time of the agency decision"), citing *Camp v. Pitts*, 411

23  U.S. 138, 142 (1973), *Overton Park*, 401 U.S. at 420.

24      [1] With respect to data related to lawful permanent residents that would be subject to the
     Rule upon return from abroad after being outside the United States for more than 180 days,
25   Defendants responded that such data was not before the agency during the decision-making
     process.  Cisneros Decl. ¶ 13.
26      [2] Defendants also represented that they are unable to produce correct, contemporaneous
     copies of the webpages referenced in the Rule.  In reliance on Defendants' representations,
27   Plaintiffs do not currently move for those corrected copies.  Plaintiffs reserve the right to seek
     inclusion of contemporaneous webpages and missing comment letters if they discover that
28   Defendants' representations are inaccurate.  Cisneros Decl. ¶ 14.

4

Pltfs' Mot to Compel Completion of the Administrative Record and
Request for Leave to Serve Discovery (Case No. 4:19-cv-04975-PJH)

1   Plaintiffs have identified several categories of records that were "directly or *indirectly*

2   considered by [the] agency," that have been improperly excluded from the Record.  *Thompson*,

3   885 F.2d at 555, quoting *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 32 (N.D. Tex. 1981)

4   (emphasis added in *Thompson*).  Below, Plaintiffs rebut the "presumption of completeness" with

5   "clear evidence," warranting an order directing Defendants to complete the Record.  *See In re*

6   *United States*, 875 F.3d at 1206; *People ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508

7   EDL, 2006 WL 708914, at *2, *4 (N.D. Cal. Mar. 16, 2006) (plaintiff need not show bad faith or

8   improper motive to rebut presumption of completeness, ordering completion of record).  In

9   particular, Defendants have failed to include relevant policy documents; data and analysis of the

10  historical application of the public charge ground of inadmissibility referenced in a

11  contemporaneous publication by the Agency on the precise topic of the Rule; and intra-agency,

12  inter-agency, and external analyses and communications that the Agency considered in the

13  rulemaking process.[3]

14         **1.**    **The Administrative Record Is Missing Policy and Guidance**
15                 **Documents Relevant to the Rule**

16  There is "clear evidence" that policies, procedures, forms, and guidances related to the

17  application of the public charge ground of inadmissibility were before the Agency during the

18  rulemaking process, but were not included in the Record.  Plaintiff States request that Defendants

19  be ordered to complete the Record to include USCIS policies governing inadmissibility

20  determinations and adjustment of status that were current as of the time the Rule was developed

21  in order to ensure the parties and the Court have a full understanding of the policies and

22  procedures that are changed or implicated by the Rule.  *See* Cisneros Decl. ¶¶ 16-65.  In

23  particular, Plaintiffs seek inclusion of portions of the USCIS's Adjudicator's Field Manual

24  (AFM) that provide guidance related to the public charge ground of inadmissibility, and Volumes

25  7 and 8 of the USCIS Policy Manual, governing adjustment of status and admissibility

26           [3] The facts and evidence alleged in support of Plaintiffs' equal protection claims—
    discussed in detail below, with respect to Plaintiffs' request for leave to serve discovery—would
27  justify allowing extra-record discovery on Plaintiffs' APA claims in that they betray "a showing
    of agency bad faith" or "improper behavior."  *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450,
28  *Dep't of Commerce*, 139 S. Ct. at 2573-74 (2019).

1    respectively, that were in existence prior to adoption of the Rule.  Agency policies regarding

2    admissibility and adjustment of status are referenced in the NPRM and final Rule.  *See e.g.*

3    Cisneros Decl. Ex. 27 (referencing AFM Chapter 61.1 for Agency guidance on public charge

4    bonds); Ex. 5 (citing USCIS Policy Manual Guidance on Adjustment of Status under INA section

5    245, Volume 7, Part B, 245(a) Adjustment).  USCIS policies governing admissibility and

6    adjustment decisions, affidavits of support, and public charge bonds are all implicated by the

7    Rule.  Cisneros Decl. ¶¶ 9, 10, 17.

8         However, rather than including the relevant portions of the AFM and USCIS Policy Manual

9    and related forms and guidance, Defendants included only copies of publicly available, redacted

10   versions of *portions* of the AFM and an internal, web-based table of contents for the USCIS

11   Policy Manual with non-functioning hyperlinks to the manual's content.  *See* Cisneros Decl. ¶¶

12   19, 54-59.[4]  The full content of these, and other, policy documents sets forth details about how the

13   public charge ground of inadmissibility was applied prior to the Rule's change in policy—details

14   that the Rule has altered.  *See e.g. id.* ¶¶ 32, 33; Exs. 13, 14.  The Agency relied on its knowledge

15   of these policies in order to craft the Rule and their inclusion in the Record is necessary to the

16   Plaintiffs' and the Court's understanding of the scope and impact of the Rule's policy change.

17        During the meet and confer process, Defendants justified excluding relevant policies from

18   the Record based on its claim that the Agency did not actively consider them during the

19   rulemaking process.  However, even "indirect" consideration requires inclusion in the

20   administrative record. *Thompson*, 885 F.2d at 555.  In addition, Plaintiffs proposed to provide

21   these policies as background materials necessary to understand the complexity of the Agency's

22   administration of the public charge ground of inadmissibility.  Cisneros Decl. Ex. 4; ¶ 8; *see Pub.*

23   *Power Council*, 674 F.2d at 794 (court may "go outside administrative record to consider

24   evidence for background information").  Because the policies, manuals, and guidances that

25   previously governed application of public charge grounds for inadmissibility were "before the

26   _____

27        [4] In the meet and confer process, counsel for Defendants represented that the publicly available versions of policy documents are complete despite appearing to be redacted, but conceded that Plaintiffs' interest in confirming this through access to copies without visible redactions was reasonable.  *See* Cisneros Decl. ¶ 8, Ex. 4.

28

agency" during the rulemaking process, they must be included to complete the Record. *Thompson*, 885 F.2d at 555-56.  Defendants have provided only partial information regarding these policies and have declined to complete the Record.  Cisneros Decl. ¶¶ 8, 16-64; Ex. 4.

### 2. Data and Analysis Regarding the Historic Application of the Public Charge Statute Are Missing from the Administrative Record

Plaintiff States also request that the article *Public Charge Provisions of Immigration Law: A Brief Historical Background,* as well as the studies and data regarding inadmissibility decisions on public charge grounds referenced in and related to the analysis presented in that article be included in the Record.  Cisneros Decl. ¶¶ 7, 9; Exs. 2, 4.  There is "clear evidence" that this article, records related to the analysis provided in the article, and data reflecting the historic application of the public charge rule, were all "before the agency" at the time the Rule was published, but they are not included in the Record.  *Thompson*, 885 F.2d at 555-56.

The same day the Agency published the Rule, USCIS published the article, *Public Charge Provisions of Immigration Law: A Brief Historical Background*, on its website.  Cisneros Decl. ¶ 67, Ex. 29.  The article marshals evidence that responds to comments to the Notice of Proposed Rulemaking (NPRM) characterizing the Rule as a "radical departure" from over 100 years of U.S. immigration policy.  It cites historical studies and figures that are neither cited in the Rule nor included in the Record to support Defendants' conclusion that the Rule does not present a significant departure from past practice.  *See id.* ¶3, Ex.1; ¶ 66, Ex. 28.  The article also selectively cites Department of State data regarding inadmissibility decisions on public charge grounds without providing the context for understanding how infrequently such denials occur.  *Id.* ¶ 77, Ex. 29 at 6-10.  The Rule itself stated, "DHS does not believe that the [R]ule is inconsistent with historical practice. . . .  Rather, the [R]ule is consistent with existing precedents that have developed since the earliest public charge laws."  84 Fed. Reg. 41,347, Cisneros Decl. ¶ 66, Ex. 28.

It strains credulity to imagine that this information—from an article published by a component of the Agency on the same day that the Agency issued a controversial Rule on precisely the same topic—was not at least indirectly considered by the Agency in connection with

7

the Rule.[5]  Analysis and statistics regarding the impact of the agency action that was before an

agency at the time it took the action must be included in the administrative record in an APA

challenge.  *See Nat. Res. Def. Council v. Train*, 519 F.2d 287, 292 (D.C. Cir. 1975) (report with

factual data, analysis, and recommendations regarding toxic pollutants that was before the agency

when it drafted and published a list of toxic pollutants should have been included in

administrative record).  And even if the article and underlying data were not before the Agency

(which is difficult to imagine), it should nevertheless be produced as extra record "background

information" "to permit explanation or clarification of . . . subject matter involved in the agency

action under review."  *Pub. Power Council*, 674 F.2d at 794, citing *Ascaro, Inc. v. U.S. Envtl.

Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980) (district court properly allowed witness

testimony on smelter operations and Environmental Protection Agency's decision-making

process); *Bunker Hill Co. v. Envtl. Prot. Agency*, 572 F.2d 1286, 1292 (9th Cir. 1977)

(considering "augmenting materials" explanatory of the original record).[6]

Access to the data both included and omitted from the USCIS article is especially important

because Plaintiffs' independent analysis of publicly available data suggests the article selectively

uses data to misleadingly characterize the historic application of public charge provisions.  *See*

Cisneros Decl. ¶¶ 69, 71-89; Ex. 33.  For example, the article relies on partial data from the

Department of State and DHS's predecessor agency, INS, providing the number of denials on

public charge grounds without the total number of applications.  *See* Cisneros Decl. ¶ 71-79.  In

fact, the limited data that is publicly available suggests that Department of State denial of entry on

---

[5] The Agency's professed failure to consider its own data and analysis of the historic application of the public charge ground of inadmissibility and, alternatively, its erroneous conclusions about previous rates of application of the public charge ground of inadmissibility, are relevant to the merits of Plaintiffs' APA claim.  *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action is arbitrary and capricious if agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise").

[6] During the meet and confer process, Plaintiffs requested, and Defendants declined, that the article and data referenced therein be produced and considered as extra record background information to aid the parties' and Court's understanding of the "complex subject matter" that is the Agency's historical application of the public charge ground of inadmissibility.  Cisneros Decl. ¶ 9, Ex. 4.

1   public charge grounds has historically been very low (under 10% of those who applied for

2   visas)—contrary to USCIS article's implication that denial of visas on public charge grounds has

3   been common.[7]  Access to data used—as well as data referenced but not used—by USCIS to

4   support the Agency's position is critical to properly evaluating the Agency's rulemaking.  Court

5   review of agency action under the APA requires a record that includes all materials considered by

6   the agency, even "evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555

7   (internal quotation marks and citation omitted).  For these reasons, Defendants should be ordered

8   to include this article and related data and analyses as part of their completion of the Record.

9             **3.     Defendants Have Improperly Excluded All Materials They Believe
                      Are Covered by the Deliberative Process Privilege.**
10

11            Defendants have refused to include inter-agency communications, White House

12   communications, or Agency analyses that were before decision-makers that finalized the Rule, on

13   the ground that the deliberative process privilege requires their exclusion, denying both the

14   parties and the Court access to the whole Record.  Cisneros Decl. ¶ 10, Ex. 4.[8]

15            In the Ninth Circuit, the deliberative process privilege is evaluated based on a four-part

16   balancing test, weighing (1) the relevance of the evidence, (2) the availability of other evidence,

17

18          [7] Cisneros Decl. ¶¶ 79-80; Ex. 33.  DHS data shows that from 1891 to 1980, the United
     States admitted 34 million permanent residents but from 1892 to 1980 (the years for which data is
19   provided) excluded only 219,399—a tiny fraction—as likely to become a public charge. *Id*.  By
     contrast, the article references "widespread use of the public charge provisions of immigration
20   law," and claims that "[f]or more than 100 years the LPC provision remained one of the most
     common reasons for excluding immigrants from the United States." *See* Cisneros Decl. ¶ 69, Ex.
     29.
21          USCIS's presentation of data from the INS is similarly incomplete.  In its annual
     Yearbook of Immigration Statistics DHS publishes data regarding the number of approved
22   applications for adjustment (legal permanent residency) and inadmissibility determinations.  The
     Record, however, does not include data regarding the number of inadmissibility determinations
23   on public charge grounds, and instead is limited to the number of persons who have obtained
     lawful permanent residency by type and class of admission. Cisneros Decl. ¶ 77.
24          [8] Defendants also claim that materials related to the development of forms for determining
     whether a person is likely to become a public charge under the Rule are outside the scope of the
25   Record because Plaintiff States' complaint does not raise concerns about such forms.  On the
     contrary, Plaintiffs have argued that the Rule's inclusion and treatment of the "Declaration of Self
26   Sufficiency" (Form I-944) are arbitrary and capricious under the APA.  *See* Motion for
     Preliminary Injunction filed Aug. 26, 2019, ECF docket no. at 27-29.  Moreover, the Agency
27   developed the form as part of its rulemaking process and aspects of the form are part of the Rule
     itself.  *See* 8 C.F.R. 103.2(a)(1) (immigration application form instructions are "incorporated into
28   the regulations requiring its submission").

                                          9

(3) the government's role in litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Fed. Trade Comm'n v. Warner*, 742 F.2d 1156, 1161 (9th Cir. 1984). *See also Modesto Irrigation Dist. v. Gutierrez*, No. 1:06-cv-00453 OWW DLB, 2007 WL 763370, at *5 (E.D. Cal. Mar. 9, 2007).  Additional factors may include (5) the interest of the litigant and society in accurate fact finding by the courts, (6) the seriousness of the issues and litigation, (7) the presence of issues concerning alleged misconduct by the government, and (8) the federal interest in enforcement of the law.  *N. Pacifica LLC v. City of Pacifica*, 274 F. Supp. 2d 1118 (N.D. Cal. 2003).  A court analyzing whether the privilege applies "must balance the public interests at stake in determining whether the privilege should yield in a particular case." *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997).

In the Northern District of California, pre-decisional, deliberative materials are part of the administrative record, with disclosure subject to a case-by-case analysis of the applicability of the qualified deliberative process privilege.  *Sierra Club v. Zinke*, No. 17-cv-07187-WHO, 2018 WL 3126401 at *3 (N.D. Cal. June 26, 2018) (noting that courts in the Northern District of California have "repeatedly required deliberative materials (such as internal comments, draft reports, emails, and meeting notes) to be added to the administrative record if they were considered in the agency's decision").

> It is obvious that in many cases internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision. Therefore the government is wrong to assert that these types of materials, as a categorical matter, should be excluded from the universe of materials "directly or indirectly considered by agency decision-makers."

*Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574-VC, 2017 WL 89003, at *1 (N.D. Cal Jan. 10, 2017); *see also Desert Survivors v. U.S. Dep't of the Interior*, 231 F. Supp. 3d 368, 382 (N.D. Cal. 2017) ("There can be no doubt that . . . pre-decisional deliberative communications may go to the heart of the question of whether an agency action was arbitrary and capricious, an abuse of discretion or otherwise inconsistent with the law under . . . the APA."); *U.S. Dep't of Agric.*, 2006 WL 708914, at *4 (ordering completion of record with the agency's "internal and external communications regarding the decision-making process . . . including drafts, internal reviews and

10

1  critiques, inter-agency reviews, . . . e-mail exchanges or other correspondence between and

2  among the agencies and/or others involved in the process and agency meeting notices" and

3  ordering production of a privilege log for any documents withheld based on privilege.).

4       Courts in this district routinely order the federal government to produce a privilege log

5  rather than allow records potentially subject to deliberative process and executive privileges to be

6  excluded wholesale from the administrative record.  *In re United States*, 875 F.3d at 1210; *see*

7  *also Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988) (burden of establishing

8  privilege lies with the party asserting it); *Ctr. for Envtl. Health v. Perdue*, No. 18-cv-01763-RS,

9  2019 WL 3852493, at *3 (N.D. Cal. May 6, 2019) ("Courts in the Northern District of California

10  have consistently required agencies seeking to assert deliberative process privilege to produce a

11  privilege log.").  A detailed privilege log—and the option of *in camera* review of a sample of

12  withheld documents—will allow the Court to evaluate Defendants' assertion of privilege.

13       Moreover, although it is premature to consider the application of privilege before

14  Defendants produce a privilege log, Plaintiffs are already aware of documents, such as U.S.

15  Department of Agriculture (USDA) comments on an early draft of the NPRM, for which the

16  deliberative process privilege should not be applied.  Based on USDA's response to a Freedom of

17  Information Act (FOIA) request, we know that USDA provided written comment in response to

18  inter-agency communications regarding public charge in advance of the publication of the NPRM

19  and participated in inter-agency meetings.  *See* Cisneros Decl. ¶¶ 83-93; Ex. 37.  As the agency

20  responsible for administering SNAP benefits—nutrition assistance that the Rule made a barrier to

21  adjustment of status for the first time—USDA's information and analysis regarding the impact,

22  feasibility, and interests affected by the Rule would be highly relevant to the Court's review of

23  the Rule.  *See* filed on Oct. 11, 2019, ECF docket no. 120, at 62 (noting Defendants' failure to

24  address health concerns from inclusion of healthcare and nutrition benefits as bases for public

25  charge determination).  The content of USDA's comments has been redacted from FOIA

26  disclosures, and the federal government is a party to this litigation, both additional factors in favor

27  of disclosure despite the deliberative nature of the records.  *Warner*, 742 F.2d at 1161.  But the

28  USDA comments are only one small example.  FOIA documents reveal that the Department of

1   Health and Human Services, which administers Medicare—another benefit significantly impacted

2   by the Rule—and several other agencies were also involved in inter-agency meetings regarding

3   early versions of the Rule.  *See* Cisneros Decl. Exs. 39, 41.

4         The deliberative process privilege is a qualified one, and the burden is on Defendants to

5   establish its application.  Because communications within DHS and between DHS and other

6   agencies and the White House were before the Agency throughout the rulemaking process,

7   Defendants should produce the records and/or a privilege log setting forth any basis for

8   withholding them.[9]

9   **II.     REQUEST FOR LEAVE TO SERVE DISCOVERY**

10        In addition to seeking a complete administrative record as required for APA review,

11  Plaintiff States seek limited and focused discovery in support of their equal protection claims,

12  which are separate and independent from their APA claims.  Under the Federal Rules of Civil

13  Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to

14  any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

15  Such discovery is appropriate because evidence relevant to Plaintiff States' constitutional claims

16  is likely to exist outside the Record, is inaccessible to Plaintiffs and the Court without discovery

17  practice, and bears on an important question subject to searching judicial scrutiny—whether the

18  Rule is motivated by invidious discriminatory intent.  Plaintiffs would be entitled to such

19  discovery had they solely brought such constitutional claims, and there is no reason to limit or

20  delay discovery merely because Plaintiffs also assert APA claims.

21

22

23

24        [9] Defendants' privilege logs should be sufficiently detailed to allow Plaintiffs to assess
    whether the assertion of privilege is justified, and thus should include (a) the title and description
    of the document, including number of pages or Bates-number range; (b) the subject matter
25  addressed in the document; (c) the identity and position of its author(s); (d) the identity and
    position of all addressees and recipients; (e) the date the document was prepared and, if different,
26  the date(s) on which it was sent to or shared with persons other than its author(s); and the specific
    basis for the claim that the document is privileged or protected.  *See* Standing Order for
27  Magistrate Judge Donna M. Ryu (revised May 22, 2019), ¶ 16,
    https://www.cand.uscourts.gov/wp-content/uploads/judges/ryu-dmr/DMR-STANDING-
28  ORDER.pdf.

**A.     Plaintiff States' Equal Protection Claim Requires a Fact-Sensitive Inquiry**

Plaintiffs allege that the Rule, while facially neutral as to race, was motivated by discriminatory intent toward non-White, non-European immigrants.  Complaint filed on Aug. 16, 2019, ECF docket no. 1, ¶ 282.[10]  The Supreme Court has long held that facially neutral government actions can violate equal protection if discriminatory animus is a motivating factor, even if discrimination is not the sole or primary purpose.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence as may be available."  *Id.* at 266.  Where a decision has a disparate effect on racial minorities, but there is no facially discriminatory policy or a clear pattern inexplicable on grounds other than race, evidence of discrimination may include "[t]he historical background of the decision . . . particularly if it reveals a series of official actions taken for invidious purposes."  *Id.* at 267.  Other evidence may include the "specific sequence of events leading up to the challenged decision," "departures from normal procedures," (*id.* at 253) and "[s]ubstantive departures . . . particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached." *Id.* at 267.

Here, Plaintiffs have alleged facts that support their claim under *Arlington Heights* and provide a strong basis for additional discovery beyond the administrative record.  The historical background of the decision includes a campaign in which President Trump made disparaging and racist comments about Mexicans while promising to cut back on immigration, and later made policy decisions that limited protections for immigrants from majority Black and Latino countries while stating a preference for more immigrants from places like Norway and asking "why are we having all these people from shithole countries come here?"  Compl. ¶¶ 284-288, 292.  Racially charged promises to stop taking care of "anchor babies" and end "chain migration" implicate the

---

[10] Plaintiffs also claim in the alternative that the Rule violates equal protection because it is motivated by animus against a politically unpopular minority, but Plaintiffs assert the right to discovery based on their allegations of racial discrimination.  *See* Compl. ¶ 345.

public charge rule directly: the message and impact of the Rule is that immigrants of color will be excluded through the Rule's cutback on family-based immigration for immigrants of modest means.  Compl. ¶¶ 286, 291.  Agency leaders and the president's immigration advisors have also made racist remarks about immigrants. *See e.g.* Cisneros Decl. Ex. 54 (report that USCIS Director Cuccinelli likened immigration policy to animal control measures, noting ineffectiveness of the latter because, "you can't break up rat families."); Cisneros Decl. Ex. 53 (report that top White House immigration advisor previously sent hundreds of emails to Breitbart News citing materials from websites espousing white nationalist and anti-immigrant viewpoints).

The news media have widely reported intense pressure from the White House to push the Rule through faster than the usual rule-making process would allow, suggesting "departures from the normal procedural sequence."  Compl. ¶ 300-302; Cisneros Decl. Exs. 34, 44, 46, 47 (senior White House advisor's emails to Agency, urging prompt issuance of Rule without regard for steps in rulemaking process, resignations of key leadership amid rulemaking); *Arlington Heights*, 429 U.S. at 267.  The publication of a substantive correction to the Rule two months after its initial promulgation is further evidence of an irregular rulemaking process.  *See Inadmissibility on Public Charge Grounds; Correction*, 84 Fed. Reg 52,357 (Oct. 2, 2019).  The Rule disparately impacts immigrants of color, who experience poverty at significantly greater rates than their White counterparts.  *See* Amended Declaration of Jennifer Van Hook in Support of Motion for Preliminary Injunction, filed on Sept. 18, 2019, ECF docket no. 102-2, ¶¶ 48-49, 55, 58-61, 65-66.  Moreover, as already found by this Court, the Rule effectuated a substantive change that largely disregarded the "factors [previously] considered important" in establishing the definition of public charge.  *Arlington Heights*, 429 U.S. at 267; Preliminary Injunction at 62 (DHS disregarded public-health consequences of Rule that animated Agency's previous policy position).

Publicly available statements of administration officials betraying racial animus towards immigrants of color, media reports of irregularities in the rulemaking process, and the Rule's disparate impact on immigrants of color and their families provide significant support for Plaintiff

1    States' interest in taking discovery to uncover related evidence. [11]  *See Arce v. Douglas*, 793 F.3d

2    968, 977-80 (9th Cir. 2015) (applying *Arlington Heights* factors to deny summary judgment to

3    defendants where termination of ethnic studies program disparately impacted Latino students,

4    statements by officials cast Mexican American student group in a negative light, and decision-

5    maker disregarded study commissioned to analyze whether program promoted racism or ethnic

6    solidarity).  As explained below, because evidence relevant to Plaintiffs' equal protection claims

7    is outside the Record and because the claim is entitled to searching judicial scrutiny, Plaintiffs are

8    entitled to discovery to prove their constitutional claims.

9        **B.    Discovery Is Appropriate Where Constitutional Claims Subject to
             Searching Judicial Scrutiny Rely on Evidence Outside the Administrative
10            Record**

11       When plaintiffs bring constitutional claims alongside APA challenges, the constitutional

12   claims are reviewed independently of the APA, and the reviewing court can "look beyond the

13   administrative record." *Grill v. Quinn,* No. CIV S–10–0757 GEB GGH PS, 2012 WL 174873 at

14   *2 (E.D. Cal. Jan. 20, 2012), citing *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979); *see*

15   *also Rydeen v. Quigg*, 748 F.Supp. 900, 906 (D.D.C. 1990) (permitting consideration of affidavits

16   for review of constitutional claim even though they were not before the agency).  This is

17   particularly true in the present circumstances where (1) evidence relevant to the claim is outside

18   the administrative record, and (2) judicial review of the claim is more searching than the

19   deference allowed to the agency under the APA.  Moreover, Plaintiffs are willing to postpone

20   discovery on their equal protection claims until the Record has been completed, should the Court

21   find it necessary to ensure that discovery is properly limited.  *See Puerto Rico Pub. Hous. Admin*

22   *v. U.S. Dep't of Hous. & Urban Dev.*, 59 F.Supp. 2d 310, 327 (D.P.R. 1999) (even when

23   discovery is permitted for constitutional claims made in APA cases, "wide-ranging discovery is

24   not blindly authorized at a stage in which an administrative record is being reviewed").

25

26        [11] The District Court for the Southern District of New York issued a preliminary
     injunction against the Rule, in part based on its findings that plaintiff organizations had
27   "sufficiently demonstrated a likelihood of success on the merits of their equal protection claim."
     Memorandum Decision and Order, filed on Oct. 11, 2019, ECF docket no. 147, *Make the Road*
28   *New York et al. v. Cuccinelli et al.*, No. 19–cv-7993 (GBD), at *20 (S.D.N.Y.).

1

**1.    Plaintiffs Seek Discovery of Information Outside the Administrative Record**

2

3    Where evidence that supports a constitutional claim differs from what is included in the

4    administrative record, courts often permit extra-record discovery to allow development of that

5    evidence.  For example, in *Grill v. Quinn*, the court granted plaintiff's motion to complete the

6    administrative record and also to take discovery on his due process claim based on evidence

7    suggesting that "evidence of true, but hidden, motivations" could supply the real basis for the

8    agency action.  2012 WL 174873 at *4.  The court held even "one legitimate inference to be

9    drawn indicating that other pertinent-to-the-decision documents might exist, is reason to allow

10    discovery at this point."  *Id.*  Similarly, in *Puerto Rico Pub. Hous. Admin.*, the court permitted

11    discovery related to statutory and constitutional claims, although its review of other claims would

12    be limited to the administrative record under the APA.  59 F. Supp. 2d at 328.  "The United States

13    Supreme Court has held that a plaintiff who is entitled to judicial review of its constitutional

14    claims under the APA is entitled to discovery in connection with those claims." *Id.*, citing

15    *Webster v. Doe*, 486 U.S. 592, 604 (1988).

16    A recent example is *Saget v. Trump*, a challenge to the Trump Administration's termination

17    of Temporary Protected Status to Haitian immigrants under both the APA and the equal

18    protection component of the Fifth Amendment Due Process Clause.  375 F.Supp.3d 280, 368

19    (E.D.N.Y. 2019).  Noting that "[i]ntentional discrimination by government officials contravenes

20    the Constitution, and 'the very doctrine contemplates a wide-ranging and penetrating inquiry

21    capable of uncovering hidden forms of discrimination,'" the court rejected defendants' argument

22    that review should be limited to the administrative record because doing so would "constrain

23    judicial review" inconsistent with "the Court's responsibility to 'smoke out' unconstitutional

24    conduct."  *Id.*, quoting *N.Y. v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 668 (S.D.N.Y.

25    2019) and *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989).  These cases are

26    distinguishable from constitutional challenges that take issue with the substance of an agency

27    decision based entirely on the record before it, in which the court may confine itself to evaluating

28    the agency decision on the record that was before it.  *See e.g. Bellion Spirits, LLC v. United*

16

*States*, 335 F.Supp.3d 32, 43 (D.D.C. 2018) (plaintiffs challenging agency decision that their advertising materials were misleading were confined to argue that record before the agency did not support the agency's determination).

Here, the Plaintiff States intend to seek discovery outside the Record related to racial animus motivating the rule such deviations from normal rulemaking processes; communications between the Agency, the White House, and external groups regarding the Rule; and statements and actions evidencing racial animus against immigrants by decision-makers outside the context of the Rule.  This may include interrogatories or a Rule 30(b)(6) deposition to identify relevant documents, followed by requests for documents bearing on the factors set forth in *Arlington Heights*, 429 U.S. at 265, and a limited number of depositions.  Plaintiffs will not seek material or information that has been included in the Record and will move to further complete the Record if discovery reveals previously undisclosed materials that were before the Agency during the rulemaking process.  *Thompson*, 885 F.2d at 555.

### 2. Discovery Is Appropriate for Plaintiffs' Equal Protection Claim Based on Racial Animus

In cases involving both APA claims and constitutional claims that involve animus, courts generally allow submission of relevant evidence outside the administrative record, denying discovery only where the constitutional claims are subject to rational basis review.  *See e.g. Chiayu Chang v. U.S. Citizenship & Immigration Servs*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017) (where rational basis review applied because no suspect class was alleged and basis for decision would likely be present in the as yet unproduced administrative record, discovery not permitted); Memorandum Opinion, *Mayor & City Council of Balt. v. Trump*, No. ELH-18-3636, 2019 WL 6970631, at *10-12 (D. Md. 2019) (review of equal protection claim must be limited to administrative record because public charge rule in Department of State's Foreign Affairs Manual relates to "entry of foreign nationals" and is therefore subject to rational basis review).[12]  In

---

[12] Consideration of extra-record evidence is also permitted for the Court's rational basis review of the Plaintiff States equal protection claim based on discrimination against an unpopular political minority, and such evidence may be revealed through—even if not the purpose of—Plaintiffs' discovery related to equal protection claim based on racial animus.  *See Trump v.*

1  *Arlington Heights*, the U.S. Supreme Court made clear that, while courts generally refrain from

2  reviewing the merits of legislative or administrative decisions "absent a showing of arbitrariness

3  or irrationality[,] . . . [w]hen there is . . . proof that a discriminatory purpose has been a

4  motivating factor in the decision, this judicial deference is no longer justified." 429 U.S. at 265-

5  66.

6      Here, discovery should be permitted because Plaintiff States' equal protection claim—

7  alleging discriminatory treatment of non-White immigrants present in the United States—

8  requires a searching judicial inquiry of the decision-makers' motivation. *Id.* at 266

9  ("[d]etermining whether invidious discriminatory purposes was a motivating factor demands a

10  sensitive inquiry into such circumstantial and direct evidence of intent as may be available").

11  Regardless of the existence of an accompanying administrative claim, courts "need not accord

12  deference to the agency's decisions in regard to . . . constitutional challenges because the courts,

13  not agencies, are experts on constitutional issues." *Rydeen*, 748 F.Supp. at 906; *see also Kisor v.*

14  *Wilkie*, 139 S.Ct. 2400, 2437 (2019) (judicial power to interpret the laws should never "be shared

15  with [the] Executive Branch"), quoting *Miller v. Johnson*, 515 U.S. 900, 922 (1995) (alteration in

16  *Kisor*).

17      **3.**    **Discovery May Follow Completion of the Administrative Record**

18      Defendants contend that, if ordered, discovery should be postponed until the Court has

19  ruled on Defendants' motion to dismiss.  The Federal Rules of Civil Procedure do not expressly

20  provide for a stay of discovery, and it is within the Court's discretion to "weigh competing

21  interests and maintain an even balance" in controlling its docket.  *Landis v. N. Am. Co.*, 299 U.S.

22  248, 254-55 (1936) (citation omitted).  Here, Plaintiff States would be amenable to postponing

23  discovery until 15 days after Defendants have completed the Record and produced a privilege log

24  for any documents withheld from the Record on the basis of privilege.  Given that the factual

25  basis for Plaintiffs' equal protection claim includes racial animus against immigrants of color by

26  

27  *Haw.*, 138 S. Ct. 2392, 2420 (2018) ("we may consider plaintiffs' extrinsic evidence" when analyzing a decision under the test of rational basis review).  A policy enacted out of animus against a particular group fails even rational basis scrutiny, as it "lacks a rational relationship to

28  legitimate state interests." *Romer v. Evans,* 517 U.S. 620, 632 (1996).

18

the President and others acting at his direction, it would be most efficient for Plaintiffs to first review a record (or at least an index that includes descriptions of records withheld on grounds of privilege) that includes inter-agency, intra-agency, and other communications that were before the agency *before* seeking additional records through discovery.

Plaintiffs, however, oppose a stay of discovery pending resolution of defendant's motion to dismiss.  Plaintiffs have brought a straightforward claim that Defendants were motivated by racial animus when advancing the Rule. The Court has already recognized the significant injury faced by the Plaintiff States as a result of the Rule, which confers standing upon Plaintiffs to challenge it.  Preliminary Injunction at 78-83.  Moreover, a stay of discovery is unnecessary given Plaintiffs' willingness to postpone discovery until the Record is completed and the Parties' previous agreement regarding the timing of Defendants' motion to dismiss.  *See* Stipulation Re Case Management Schedule; Order filed on Dec. 20, 2019, ECF docket no. 145 (motion to dismiss due 21 days after Court order permitting discovery).

If the Court orders completion of the Record within 30 days, Defendants' motion to dismiss will likely be resolved before their discovery obligations come due.[13]  In order to resolve questions regarding the applicability of any claimed privilege, Plaintiffs recommend the Court order the parties to meet and confer and submit a joint letter brief within 15 days of Defendants' completion of the Record and service of a privilege log.

## CONCLUSION

For the foregoing reasons, the Plaintiff States respectfully request that the Court order Defendants to complete the Record to include policies, procedures, forms and guidance related to the application of the public charge ground of inadmissibility and other procedures implicated by the Rule that were in place prior to the Rule's issuance; the USCIS article, *Public Charge Provisions of Immigration Law: A Brief Historical Background*, and all data the article references, including INS, DHS, and Department of State consular processing statistics related to public charge determinations; inter- and intra-agency communications related to the Rule,

---

[13] Plaintiffs would not object to Defendants' earlier filing of a motion to dismiss if Defendants would prefer to have that motion resolved before Plaintiffs serve discovery.

19

1   including records related to the process of developing forms related to public charge

2   determinations and estimations explained in the Rule's Regulatory Impact Analysis; and White

3   House and other external communications to the Agency related to the Rule.  In addition, Plaintiff

4   States request that the Court allow them to take discovery in support of their equal protection

5   claims following Defendants' completion of the Record.

6

7   Dated:  January 29, 2020                    Respectfully Submitted,

8                                              XAVIER BECERRA
                                               Attorney General of California
9                                              MICHAEL L. NEWMAN
                                               Senior Assistant Attorney General
10                                             CHEROKEE DM MELTON
                                               Supervising Deputy Attorney General
11                                             JENNIFER C. BONILLA
                                               LISA CISNEROS
12                                             KATHERINE LEHE
                                               ANNA RICH
13                                             ANITA GARCIA VELASCO
                                               BRENDA AYON VERDUZCO
14

15

16                                             /s/ Julia Harumi Mass_____
                                               JULIA HARUMI MASS
17                                             Deputy Attorney General
                                               Attorneys for Plaintiff State of California
18

19                                             KARL A. RACINE
                                               Attorney General for the District of
20                                             Columbia
                                               KATHLEEN KONOPKA
21                                             Deputy Attorney General
                                               Public Advocacy Division
22                                             ALACOQUE HINGA NEVITT
                                               Assistant Attorney General
23                                             441 4th Street, N.W.
                                               Washington, DC 20001
24                                             Tel (202) 724-6532
                                               Fax (202) 730-1900
25                                             Alacoque.nevitt@dc.gov

26                                             Attorneys for Plaintiff District of Columbia

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

AARON M. FREY
Attorney General of Maine
SUSAN P. HERMAN
Chief Deputy Attorney General
6 State House Station
Augusta, Maine 04333-0006
Telephone: (207) 626-8814
Email: susan.herman@maine.gov
*Attorneys for Plaintiff State of Maine*

ELLEN ROSENBLUM
Attorney General of Oregon
NICOLE DEFEVER
Assistant Attorneys General
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
(503) 378-4402
Benjamin.Gutman@doj.state.or.us
Nicole.Defever@doj.state.or.us
Patty.Rincon@doj.state.or.us
*Attorneys for Plaintiff State of Oregon*

JOSH SHAPIRO
Attorney General for the Commonwealth of
Pennsylvania
MICHAEL J. FISCHER
Chief Deputy Attorney General
AIMEE D. THOMSON
Deputy Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Tel (267) 940-6696
athomson@attorneygeneral.gov
*Attorneys for Plaintiff Commonwealth of
Pennsylvania*

20

21

22

23

24

25

26

27

28

Pltfs' Mot to Compel Completion of the Administrative Record and
Request for Leave to Serve Discovery (Case No. 4:19-cv-04975-PJH)