JOSEPH H. HUNT
Assistant Attorney General
DAVID L. ANDERSON
United States Attorney
ALEXANDER K. HAAS, SBN 220932
Branch Director
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
  P.O. Box 883
  Washington, D.C. 20044
  Telephone:  (202) 305-7664
  Facsimile:  (202) 616-8470
  Email: joshua.kolsky@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.* | Case No. 3:19-cv-04975-PJH |
| | Case No. 4:19-cv-04980-PJH |
| Plaintiffs, | |
| v. | **NOTICE OF SUPPLEMENTAL AUTHORITY** |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |
| | |
| LA CLINICA DE LA RAZA, *et al.*, | Date: March 4, 2020 |
| | Time: 9:00 a.m. |
| Plaintiffs, | Courtroom: 3 |
| v. | Judge: Hon. Phyllis J. Hamilton |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

Defendants respectfully submit this Notice of Supplemental Authority in support of their Opposition to Plaintiffs' Motions to Compel Completion of the Administrative Record and Request for Leave to Serve Discovery. *See California*, ECF No. 151; *La Clinica*, ECF No. 152. Attached hereto is a decision in *Almaklani v. Trump*, No. 18-398 (E.D.N.Y. Mar. 17, 2020), in which the court held that discovery was unavailable to the plaintiffs, including for the plaintiffs' constitutional claims, because the court's review is limited to the administrative record.

Dated: March 25, 2020                                Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ALEXANDER K. HAAS, SBN 220932
Branch Director

*/s/ Joshua Kolsky*
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar 993430
ERIC J. SOSKIN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
joshua.kolsky@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KASSEM ALMAKLANI, *et al*,

                                    Plaintiffs,

                -against-

DONALD J. TRUMP, *et al*,

                                    Defendants.
------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
18 CV 398 (NGG) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On January 19, 2018, plaintiffs, Yemeni nationals and their American Citizen and Legal Permanent Resident family members, filed a petition for a writ of mandamus and a Complaint for declaratory and injunctive relief against Donald J. Trump, Stephen Miller, Jeffrey Sessions, Lee Cisna, Kristjen Nielsen, Donald Neufeld, and various unknown employees of the United States Citizenship and Immigration Services ("USCIS") (collectively, "defendants"), alleging that defendants have implemented discriminatory procedures, policies, and programs enacted to prevent Yemenis from immigrating to the United States.

Currently pending before this Court is plaintiffs' motion for discovery. For the reasons set forth below, the Court denies plaintiffs' motion.

FACTUAL BACKGROUND

In their Amended Petition, filed on June 6, 2018, plaintiffs allege that each of them filed a Form I-130, Petition for Alien Relative, on behalf of their family members and provided all the necessary documentation. (Am. Pet'n[1] ¶¶ 161-448). While the majority of plaintiffs filed their

---

[1] Citations to "Am. Pet'n" refer to plaintiffs' Amended Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief, filed on June 6, 2018, ECF No. 31.

petitions between 2016 and 2017, others filed earlier, between 2012 and 2015, with several filed as early as 2005, 2006, 2007; the oldest one appears to have been pending since 1992. (Id.; see id. ¶ 180). Plaintiffs allege that despite providing all requested documentation and responding to all notices, their petitions have been unreasonably delayed and they are still awaiting a proper and complete adjudication. (Id. ¶¶ 161-448). They allege that defendants have engaged in a scheme to "stymy and prevent Yemeni Muslim immigration to the United States." (Id.)

Specifically, plaintiffs allege that the Immigration and Nationality Act ("INA") provides the process by which a U.S. citizen can petition for an immediate relative to immigrate to the United States. (Id. ¶ 449). Under the USCIS' Adjudicators Field Manual, Ch. 11.1(c) – Standard of Proof, the petitioner has the burden to make out a case of eligibility in support of an I-130 petition and that only where the primary evidence is unavailable should secondary evidence or an interview be required. (Id. ¶¶ 450-453). Plaintiffs allege that "[g]enerally" I-130 petitions are approved on receipt of a completed application, primary evidence, and the payment of the required fees, and requests for evidence or in-person interviews are not normally sought until after there has been an individualized review of the petition. (Id. ¶¶ 455-456).

According to plaintiffs, however, defendants have implemented higher standards of proof needed to demonstrate family relationship for individuals petitioning for Yemeni nationals. (Id. ¶ 460). Among other things, plaintiffs claim that defendants consider all Yemeni I-130 Petitions to be "'fraudulent until proven otherwise.'" (Id. ¶ 461 (quoting U.S. DOS Cable 09SANAA1729)). Moreover, plaintiffs claim that Yemeni petitions are subject to a mandatory in-person interview even though USCIS discourages such interviews for non-Yemeni petitions, and service centers considering Yemeni petitions also issue Requests for Evidence more often than required under the normal I-130 adjudication process. (Id. ¶¶ 464-465). Plaintiffs allege

2

that USCIS officers are directed to scrutinize the immigration records of both the petitioner and beneficiary and, if there are any discrepancies, to deny the petitions. (Id. ¶¶ 466-467).

In addition to these allegedly discriminatory practices, plaintiffs allege that USCIS officers ask the Yemeni petitioners to sign a sworn statement in which irrelevant information about other relatives is required in an effort to "create a database of Yemeni families," and to "harass, delay, and deny other Yemeni I-130 petitions." (Id. ¶ 471). Similar sworn statements are not required of non-Yemeni petitioners. (Id. ¶ 470). Other tactics alleged to be used to discourage and delay petitions include seeking duplicative Requests for Evidence, and conducting duplicative and unnecessary security and systems checks at local field offices even if they have already been conducted at USCIS service centers. (Id. ¶¶ 473-478).

Plaintiffs allege that defendants conspired to promulgate the unlawful and discriminatory scheme against Yemenis in violation of the Nondiscrimination Clause of the INA, the Due Process and Equal Protection Clause of the Fifth Amendment, the Establishment Clause of the First Amendment, and federal regulations. (Id. ¶¶ 479-480). Plaintiffs claim that in 2017, the number of approvals of I-130 petitions for Yemenis had fallen to their lowest level in more than a decade and have continued to fall since. (Id. ¶ 496).

In Count One, plaintiffs contend that they have exhausted all administrative remedies in an effort to have their petitions adjudicated, but to no avail, and they seek to mandamus defendants to properly adjudicate the plaintiffs' petitions in good faith. (Id. ¶¶ 512-520). In Count Two, plaintiffs seek injunctive relief under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 555, 701 et seq., to compel the agency to issue decisions on plaintiffs' petitions. (Id. ¶¶ 521-530). Count Three seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, stating that defendants' unreasonable delay and failure to notify plaintiffs regarding their I-130 petitions

3

violated the INA and other federal laws and regulations. (Id. ¶¶ 531-535). Counts Four and Five allege Fifth Amendment violations of substantive and procedural due process (id. ¶¶ 536-544); Count Six raises violations of the Equal Protection Clause of the Fifth Amendment (id. ¶¶ 545-552); and Count Seven alleges violations of the First Amendment Establishment Clause in that defendants' policies target Muslims. (Id. ¶¶ 553-559). Plaintiffs' final claim alleges a conspiracy to interfere with plaintiffs' civil rights pursuant to 42 U.S.C. § 1985(3). (Id. ¶¶ 560-577).

## DISCUSSION

On June 28, 2019, defendants filed a motion for summary judgment, seeking to dismiss plaintiffs' claims for lack of jurisdiction and for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (See ECF No. 66). On August 12, 2019, pursuant to a scheduling Order issued by the District Judge, the parties submitted a fully briefed set of papers addressing plaintiffs' May 24, 2019 motion seeking a Rule 16(b) conference with the Court, along with discovery. (Pls.' Mem.[2]).

In their Memorandum of Law, plaintiffs detail some of the documents and information that they seek, claiming that the facts most dispositive of the overall Yemeni I-130 scheme are not contained within the individual plaintiffs' records. Thus, they seek the following types of documents: 1) training documents; 2) all documents related to formulation of the 2012 Yemeni I-130 Policy Memorandum; 3) unredacted 2012 USCIS and/or DHS Yemeni I-130 policies; 4) an unredacted version of USCIS Policy Memorandum 602-0064; 5) documents relating to the time periods for adjudicating Yemeni nationals' I-130 applications; 6) reports submitted to

---

[2] Citations to Pls.' Mem. refer to plaintiffs' Memorandum in Support of Plaintiffs' Motion for Discovery, dated May 24, 2019, ECF No. 71.

4

defendants under the Presidential Proclamation 9645, sections 4(a) and 5(a); and 7) the report submitted by former Secretary of Homeland Security, John F. Kelly, on July 9, 2017[3] (the "Kelly Report"). (Pls.' Mem. at 4-5). Plaintiffs also seek "limited discovery" of the decision-making processes applied to non-Yemeni applicants to show the differences and the prejudice caused to Yemeni families. (Id. at 5-6). These requested documents include: 1) documents relating to I-130 family-based adjudication procedures and processing times from January 1, 2013 to the date of service of the responses; 2) documents showing the breakdown of processing times by country for the last two years; and 3) internal reports and statistics showing the comparative processing times for Yemeni nationals and non-Yemeni petitioners. (Id. at 6).

Defendants oppose the motion on the grounds that this is an action seeking review of a USCIS policy under the APA, 5 U.S.C. § 706(2), and that discovery is not permitted in APA challenges where the determination is based solely on the administrative record that was before the agency at the time of the promulgation of the challenged policy. (Defs.' Mem.[4] ¶ 7). Defendants also oppose plaintiffs' "eleventh-hour" motion as an untimely and procedurally improper response to defendants' summary judgment motion, and contend that the categories of discovery sought are inappropriate and constitute a "time-wasting fishing expedition." (Id. ¶¶ 12, 15).

For the reasons set forth below, the Court denies plaintiffs' motion for discovery.

A. The Administrative Procedures Act

Under the APA, a "person suffering legal wrong because of agency action or adversely

---

[3] The Kelly Report of July 9, 2017 provides guidance as to the types of information required for confirming identities of those seeking entry to the United States from Yemen. (Pls.' Reply at 4).

[4] Citations to "Defs.' Mem." refer to the defendants' Memorandum in Opposition to Plaintiffs' Motion for Discovery, dated June 28, 2019, ECF No. 72.

5

affected or aggrieved by agency action. . . is entitled to judicial review[.]" Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008) (quoting 5 U.S.C. § 702) (case citations omitted). Judicial review is limited to review of "final agency action for which there is no other adequate remedy in court." Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (quoting 5 U.S.C. § 704); Ali v. Tillerson, No. 16 CV 3691, 2017 WL 7048809, at *2 (E.D.N.Y. Nov. 21, 2017). While the APA does not confer subject matter jurisdiction for purposes of filing suit in a federal district court, the Supreme Court has held that 28 U.S.C. § 1331 effectively confers jurisdiction over a suit that arises under a right of action created by the APA. See Bowen v. Mass., 487 U.S. 879, 891 (1988) (stating that "it is common ground that if review is proper under the APA, the [Federal] District Court ha[s] jurisdiction under § 1331").

B. Review of Agency Determination Under the APA

The standard of review to be applied to an agency determination under the APA is whether the agency's action was arbitrary and capricious. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971) (holding that upon review, the court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"). It is well established that in examining the "determination or judgment which an administrative agency is alone authorized to make," the reviewing court must judge the propriety of such action "solely by the grounds invoked by the agency." Diallo v. U.S. Dep't of Justice Bd. of Immigration Appeals, 548 F.3d 232, 235 (2d Cir. 2008) (quoting Securities and Exchange Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)). If the administrative agency's determination or judgment is unclear, the reviewing court "cannot be expected to chisel that which must be precise from what the agency has left vague and indecisive." Mei Fun Wong v. Holder, 633 F.3d 64, 77 (2d Cir. 2011) (quoting Securities and

6

Exchange Comm'n v. Chenery Corp., 332 U.S. at 196-97).

C. The Parties' Arguments

1) Judicial Review Under the APA is Limited to the Administrative Record

Defendants oppose plaintiffs' motion for discovery, arguing that under the APA, review of the agency's determination is limited to the closed administrative record, and the district court's role is that of an appellate tribunal to review the agency decision based on the record that the agency presents to the court. (Defs.' Mem. ¶ 1); see Florida Power & Light Co. v. Lorian, 470 U.S. 729, 743-44 (1985); Camp v. Pitts, 411 U.S. 138, 142 (1973) (holding that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"). Thus, because the district court sits not as a fact-finder, but as a reviewing court, discovery is generally not permitted. Florida Power & Light Co. v. Lorian, 470 U.S. at 744; see also Henley v. FDA, 77 F.3d 616 (2d Cir. 1996) (holding that since the question of whether an agency policy is arbitrary and capricious is purely a legal issue, fact discovery is not necessary); see also Common Sense Salmon Recovery v. Evans, 217 F. Supp. 2d 17, 20 (D.D.C. 1992) (holding that "because a court's review of an agency's decision is confined to the administrative record. . .courts uniformly have held that discovery typically is not permitted").

Thus, the "standard discovery tools" do not apply. Comprehensive Cmty. Dev. Corp. v. Sebelius, 890 F. Supp. 2d 305, 312 (S.D.N.Y. 2012). Defendants argue that introducing evidence outside of the administrative record "would potentially lead the court to supplanting its judgment for the agency's, undermining the administrative process." (Defs.' Mem. ¶ 2 (citing Asarco, Inc. v. EPA, 616 F.2d 1153, 1160 (9th Cir. 1980) (holding that "[w]hen a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to

7

substitute its own judgment for that of the agency"))).

Defendants argue that plaintiffs have already received the administrative record that contains the "entire account of the decision-making process behind the Yemeni Guidance, including all non-privileged material 'before the agency at the time it took the action under review.'" (Defs.' Mem. ¶ 4 (quoting Florida Power & Light Co. v. Lorian, 470 U.S. at 743-44)). The USCIS has submitted a certification stating that the agency did not consider any nonprivileged material in issuing the Yemeni Guidance beyond what has been included in the filed record. (Id. (citing ECF No. 37 at 1)). Defendants argue that since plaintiffs have made no showing that the administrative record is incomplete, nor have they made the "'strong showing'" that the government has acted in bad faith or engaged in improper behavior, there is no need to supplement the administrative record with extraneous discovery. (Id. ¶¶ 4, 5 (citing Pacific Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 6 (D.D.C. 2006) (denying discovery where the plaintiffs failed to "put forth concrete evidence to show that the record was not properly designated," and stating that they cannot meet their burden "simply by asserting that the documents are relevant")). See also Citizens to Preserve Overton Park v. Volpe, 401 U.S. at 420 (holding that the plaintiffs must make a "strong showing in support of a claim of bad faith or improper behavior" which is necessary to overcome the record rule).

"Once an agency presents a certified copy of the complete administrative record to the court, the court presumes that the record is properly designated." Pacific Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d at 5 (citing Ammex, Inc. v. United States, 62 F. Supp. 2d 1148, 1156 (C.I.T. 1999)). [A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the

8

administrative record." Id. See U.S. Postal Serv. v. Gregory, 534 U.S. 1, 10 (2001) (noting that "a presumption of regularity attaches to the actions of Government agencies"); Withrow v. Larkin, 421 U.S. 35, 47 (1975) (discussing the "presumption of honesty and integrity in those serving as [agency] adjudicators"); Estate of Landers v. Leavitt, 545 F.3d 98, 113 (2d Cir. 2008) (rejecting plaintiffs' argument that "this principle of judicial review creates a risk that agencies will be able to hoodwink courts into accepting agencies' self-interested justifications," and stating "we are unwilling to ascribe such nefarious motives to agency action as a general matter").

As a consequence, plaintiffs must make a "'strong preliminary showing[] of bad faith' or improper behavior by the agency." Ali v. Pompeo, No. 16 CV 3691, 2018 WL 2058152, at *5 (E.D.N.Y. May 2, 2018) (quoting National Nutritional Foods Ass'n v. Food & Drug Admin., 491 F.2d 1141, 1145 (2d Cir. 1974)). As Judge Bulsara noted in Ali v. Pompeo, "[t]his is no small hurdle;" "a party must make a significant showing -- variously described as a strong, substantial, or prima facie showing that it will find material in the agency's possession indicative of bad faith." 2018 WL 2058152, at *5 (quoting Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001)).

Plaintiffs have made no showing of bad faith in connection with the agency's production of the administrative record, nor have they overcome the strong presumption of regularity that attaches to the agency's certification of the record. Plaintiffs are simply seeking discovery of additional documents that they believe would be supportive of their claims. Unfortunately, in the context of a proceeding against a federal agency, under the APA, such discovery is generally not available, and in this case, plaintiffs have not demonstrated an entitlement to discovery beyond the record.

9

2) Plaintiffs' Constitutional Claims

Plaintiffs assert several other arguments in support of their motion for discovery beyond the administrative record. First, they insist that the Complaint raises not only claims under the APA but also constitutional claims under the First and Fifth Amendments, and accordingly, these claims entitle them to discovery. (Pls.' Mem. at 1). Plaintiffs rely on two cases in which they claim that the courts, faced with similar claims, granted discovery based on the constitutional challenges, including a decision in this court where expedited discovery was ordered with respect to the Yemeni I-130 scheme. (Id. (citing Al Himyari v. Cissna, No. 18 CV 10242 (E.D. Mich. May 2, 2018)); and Dihyem v. Cissna, No. 18 CV 2090 (E.D.N.Y. Apr. 19, 2018))).

Defendants challenge plaintiffs' constitutional arguments as "specious," contending that even though plaintiffs have designated these claims as "constitutional," "in reality these are just different species of APA claims." (Defs.' Mem. ¶ 8). Defendants note that there is no waiver of sovereign immunity allowing claims to be brought against the government directly under the Constitution, and that the only basis for bringing these claims is under the APA. (Id.) See Harkness v. Sec'y of Navy, 858 F.3d 437, 451 n.9 (6th Cir. 2017) (stating that a constitutional claim "is properly reviewed on the administrative record"), cert. denied, 138 S. Ct. 2648 (2018).

To the extent that plaintiffs rely on two unpublished decisions arguing that there the judges allowed discovery outside the record, it should be noted that in Dihyem, even though the court initially allowed limited discovery, the court stayed the order before any discovery actually occurred and eventually dismissed the case as moot. Dihyem v. Cissna, No. 18 CV 2090 (referencing docket entries). (See Defs.' Mem. ¶ 9). In dicta, the court in Dihyem expressed the view that plaintiffs' argument for discovery based on the presence of constitutional claims in the complaint was wrong as a matter of law. (Id.) With respect to Al Himyari, the other case relied

10

on by plaintiffs, there the court granted defendants' motion to dismiss, having found plaintiffs' claims moot. See Al Himyari v. Cissna, No. 18 CV 10242 (E.D. Mich. May 2, 2018). Plaintiffs have failed to explain the relevance of this case and not shown how its holding is dispositive of the issues before the court.

While plaintiffs' two cited cases do not directly support the argument that discovery is appropriate when constitutional claims are included with a challenge to agency action under the APA, there is "no consensus among district courts on whether discovery should be permitted for constitutional claims that are brought alongside an APA claim." Afianian v. Duke, No. 17 CV 7643, 2018 WL 9619346, at *5 (C.D. Cal. Nov. 30, 2018) (reviewing the caselaw). See Bellion Spirits, LLC v. United States, 335 F. Supp. 3d 32, 41-42 (D.D.C. 2018) (stating "[t]he caselaw on a plaintiff's ability to supplement an administrative record to support a constitutional cause of action is sparse and in some tension"); Chang v. U.S. Citizenship & Immigration Servs., 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (noting that as to constitutional claims, "there appears to be some disagreement among district courts whether the assertion of constitutional claims takes a case outside the procedural strictures of the APA, including the record review rule").

Some courts have held that since Section 706 of the APA explicitly provides for judicial review of final agency action that is "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2), the record rule applies even in the context of a claimed constitutional violation. See, e.g., Jarita Mesa Livestock Grazing Ass'n v U.S. Forest Serv., 58 F. Supp. 3d 1191, 1237-38 (D.N.M. 2014) (denying extra-record discovery on a First Amendment claim); Harvard Pilgrim Health Care v. Thompson, 318 F. Supp. 2d 1, 7-11 (D.R.I. 2004) (denying discovery on constitutional claims and stating "[t]he APA's restriction of judicial review to the administrative record would be meaningless if any party seeking review based on .

11

. . . constitutional deficiencies was entitled to broad-ranging discovery"). As the court in Chang v. U.S. Citizenship & Immigration Servs. noted: "To hold otherwise, 'and allow fresh discovery, submission of new evidence and legal arguments' would 'incentivize every unsuccessful party to agency action to allege. . . .constitutional violations' in order to 'trade in the APA's restrictive procedures for the more evenhanded ones of the Federal Rules of Civil Procedure.'" 254 F. Supp. 3d at 161-62 (quoting Jarita Mesa Livestock Grazing Association v U.S. Forest Service, 58 F. Supp. 3d at 1238).

Thus, some courts faced with both APA and constitutional claims have simply denied discovery based on a finding that the constitutional claims "fundamentally overlap" with the APA claims, making additional discovery unnecessary. See, e.g., Alabama-Tombigbee Rivers Coal. v. Norton, No. CV 01-S-0194-S, 2002 WL 227032, at *3-6 (N.D. Ala. Jan. 29, 2002); see also Bellion Spirits, LLC v. United States, 335 F. Supp. 3d at 43-44 (holding that "[g]iven the dearth of caselaw on point in this circuit, the Court declines to adopt any bright line or categorical rule" and finding that in that case there was no need to supplement the administrative record "for any constitutional claim that requires the Court to analyze the substance of an agency's decision that is, in turn, based on an evaluation of that record"); Afianian v. Duke, 2018 WL 9619346 at *7 (declining to draw a bright line rule but finding that given the claims and the breadth of the requested discovery – plaintiff sought all I-130 petitions filed since January 2012 – plaintiff was not entitled to discovery); Chang v. U.S. Citizenship & Immigration Servs., 254 F. Supp. 3d at 162 (finding that the plaintiffs' constitutional claims in that case were "fundamentally similar to their APA claims" and denying their request for additional discovery beyond the administrative record).

Although there is some "slim authority," Chang v. U.S. Citizenship & Immigration

12

Servs., 254 F. Supp. 3d at 162, for allowing discovery beyond the administrative record, the cases have presented unique and distinguishing circumstances from the present case. See, e.g., Puerto Rico Pub. Housing Admin. v. U.S. Dep't of Housing & Urban Dev., 59 F. Supp. 2d 310, 327-28 (D.P.R. 1999) (finding that the complete absence of an administrative record with respect to certain issues required discovery); see also Porter v. Califano, 592 F.2d 770, 772 (5th Cir. 1979) (noting that the agency's fact-finding procedures "were inadequate"); Manker v. Spencer, No. 3:18-CV- 372, 2019 WL 5846828, at *19 (D. Conn. November 7, 2019) (allowing discovery outside the administrative record in a class action where the plaintiffs were challenging the Naval Discharge Review Board's general course of conduct in denying discharge upgrades and the agency sought to limit review to the administrative records of the two named plaintiffs; the court stated: "[w]here a plaintiff challenges an agency's general course of conduct rather than a discrete adjudication, limited discovery . . . may be necessary where the administrative record does not contain evidence of the challenged action");[5] Carlsson v. U.S. Citizenship & Immigration Servs., No. 2:12-CV-07893, 2015 WL 1467174, at *12 (C.D. Cal. March 23, 2015) (allowing limited discovery only as to plaintiff's retroactivity claims); Grill v. Quinn, No. 10 CV 0757, 2012 WL 174873, at *4 (E.D. Cal. Jan. 20, 2002) (allowing the pro se plaintiff to engage in additional discovery as to the non-APA claim, where the court's own review of the record found that there were deficiencies in the record that suggested that "not all the reasons for the decision are in the record").

In Vidal v. Duke, Nos. 16 CV 4756, 17 CV 5228, 2017 WL 8773110, at *3 (E.D.N.Y.

---

[5] The decision in Manker is distinguishable from the situation here, where the administrative record is not simply limited to the individual determinations as to the applications of the individual plaintiffs, but the agency has certified that it has produced the entire record underlying the decision to implement the Yemeni Guidance. (See discussion supra at 8).

13

Oct. 17, 2017), this Court held that "the general rule that review of agency action is limited to the administrative record compiled by the agency is not absolute." The plaintiffs in Vidal sought discovery in an action under the APA, challenging the government's decision to end the Deferred Action for Childhood Arrivals ("DACA") Program. Plaintiffs also asserted certain collateral decisions affecting DACA beneficiaries, including constitutional Due Process claims of failure to provide individualized notice and equitable claims based on changes in the government's policy for using information from DACA applications for immigration enforcement purposes. Id. at *2. The court noted that discovery may be ordered where there is "'clear evidence' that the record omits relevant materials;" in such circumstances limited discovery may be authorized to supplement the record. Id. at *3 (citing Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993), and Dopico v. Goldschmidt, 687 F.2d 644, 654 (2d Cir. 1982)). In Vidal, the court allowed limited discovery, based on its determination that the administrative record was limited to the decision to end the DACA program, and shed no light on the agency's actions with regard to the collateral decisions challenged by the plaintiffs. Id. at *2.

This Court agrees that there may be circumstances in which discovery to supplement the record may be necessary, such as in Vidal where the record was devoid of any information relating to certain agency decisions, or in Manker, where there were class claims raised regarding an overarching agency policy and the agency sought to limit the record to just the named plaintiffs. However, to allow broad ranging discovery under Rule 26, beyond the administrative record in every case where a plaintiff alleges a constitutional claim, would be inappropriate and render meaningless the APA's restriction of judicial review to the administrative record. See Harvard Pilgrim Health Care of N.E. v. Thompson, 318 F. Supp. 2d at 10. In this case, although

14

plaintiffs have brought their claims as a class action challenging the Yemeni Guidance under a variety of constitutional theories, the government has certified that the agency has produced the entire administrative record underlying the determination to adopt the Yemeni Guidance as an overall policy, and has not limited the record to the applications of one or more individual petitioners. Plaintiffs have also failed to make the requisite "strong" showing that the agency acted in bad faith, nor have they provided convincing evidence that the record is incomplete. In the absence of "clear evidence to the contrary," the Court finds that the administrative record has been properly designated and the addition of constitutional claims does not alter the sufficiency of the record.

    3) <u>Agency Policy</u>

Plaintiffs argue that even if the constitutional claims do not stand independently of the APA claim, they are nonetheless entitled to limited discovery because the Complaint focuses not just on individual agency adjudications, but rather on an agency policy, which they contend is akin to challenging an agency rulemaking decision. (Pls.' Mem. at 2). Citing <u>Wagafe v. Trump</u>, No. 17 CV 0094, 2017 WL 2671254, at *10 (W.D. Wash. June 21, 2019), plaintiffs argue that the Yemeni scheme, like the Controlled Application Review and Resolution Program ("CARRP") at issue in <u>Wagafe</u>, was final agency action. (Pls.' Mem. at 2-3). Plaintiffs thus seek discovery as to the decision-making process behind the Yemeni policy to show that it is arbitrary. (<u>Id.</u> at 3). Plaintiffs argue that the USCIS has no mechanism for allowing a petitioner to examine or resolve a constitutionally based challenge to USCIS policies, allowing them to evade review. (<u>Id.</u> at 7). Arguing that constitutional questions are "unsuited" to resolution through the administrative process, plaintiffs contend that they should be granted the opportunity to conduct discovery. (<u>Id.</u> at 7-8).

15

Defendants dispute plaintiffs' argument that because they are challenging an agency policy and not an individual adjudication, they are entitled to discovery beyond the administrative record. (Defs.' Mem. ¶ 7). Defendants have represented that they produced all of the administrative record underlying the decision-making process behind the Yemeni Guidance, and have certified that "all non-privileged material 'before the agency at the time it took the action under review'" has been provided. As noted, once a certified copy of the complete administrative record has been provided to the court, the presumption is that "the record is properly designated." Pacific Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d at 5. Defendants argue that plaintiffs have cited no authority in support of their argument that where there is a challenge to an administrative policy, as opposed to an individual claim, the APA's limitation to the administrative record does not apply. (Defs.' Mem. ¶ 7). Insofar as plaintiffs have cited Wagafe, defendants argue that the case is inapposite because it did not address extra-record discovery, but considered only whether CARRP was a final agency action that could give rise to an APA claim – a question that is not at issue here. (Id.)

In the absence of any authority that differentiates between a challenge to a policy under the APA and an individual claim, the Court finds no basis on which to find that defendants' certification of the administrative record underlying the agency's decision-making process leading to the adoption of the Yemeni Guidance policy should not suffice to support a finding that the record has been properly designated and no basis on which to conclude that the limitations set in the APA regarding the scope of review would not present here.

4) Other Arguments

Defendants also dispute the allegation that the USCIS discriminated against the plaintiffs on account of race, religion or nationality when it promulgated the Yemeni Guidance. (Id. ¶ 10).

16

Defendants cite to their papers in support of the motion for summary judgment to argue that plaintiffs' "conclusory allegations of discriminatory animus are implausibly pled, emphatically contradicted by the administrative record, and fail to state a constitutional claim of any nature." (Id. (citing Defendants' Motion for Summary Judgment at 38-43, ECF No. 66; Defendants' Reply Memorandum at 12-13, ECF No. 68)). Indeed, defendants argue that plaintiffs' discrimination claim is belied by the fact that "the majority of Plaintiffs' own petitions have been *approved*," notwithstanding the Yemeni Guidance. (Id.) According to defendants, the Yemeni Guidance was actually designed to facilitate the approval of Yemeni petitions. (Id.)

Defendants also contend that plaintiffs fail to explain why they should be permitted to take additional discovery when the vast majority of plaintiffs' I-130s have already been adjudicated, rendering the mandamus claims moot. (Id. ¶ 11). In their Reply Memorandum, plaintiffs argue that the administrative record here is incomplete, in that it fails to include documents that were considered by the agency, such as the Kelly Report of July 9, 2017, and other periodic reports provided to the President pursuant to Presidential Proclamation 9645.[6] (Pls.' Reply at 3-4).[7] Defendants contend that they have produced the complete record and that

---

[6] According to plaintiffs, Presidential Proclamation 9645 culminated in a review in which a baseline for information required from foreign governments was established. (Pls.' Reply at 4-5).

[7] To the extent that plaintiffs are arguing that the administrative record is incomplete, defendants assert that their recourse was to file a motion to compel pursuant to Fed. R. Civ. P. 37(a)(1) after the administrative record was filed. (Defs.' Mem. ¶ 13). Defendants argue that because they did not do so and have not provided an explanation for why they are now attempting to pursue discovery under Fed. R. Civ. P. 16, plaintiffs should not be allowed to raise this argument now. (Id.) More importantly, defendants argue that if plaintiffs had a basis to allow extra-record discovery, their motion, submitted in response to the defendants' motion for summary judgment, is untimely and improper. (Id. ¶ 12). Plaintiffs should have submitted a Rule 56(d) motion, accompanied by an affidavit or declaration, stating that plaintiffs could not respond to the summary judgment motion because, without discovery, they lacked the necessary facts to justify their opposition. (Id. (citing Fed. R. Civ. P. 56(d))). Since the Court is denying any additional discovery, it is unnecessary to reach these procedural arguments at this time.

17

plaintiffs have not overcome the presumption that the government has provided a full and complete record. (Defs.' Mem. ¶ 5).

Defendants further argue that the categories of discovery sought by plaintiffs are overbroad and inappropriate, and that plaintiffs fail to demonstrate how any of the categories justify discovery outside the record. (Id. ¶¶ 15-17). Defendants point out that the requests for documents comparing adjudicative procedures and processing times are irrelevant because conditions in each country differ. (Id. ¶ 17). The fact that in some instances USCIS adjudicators can decide an I-130 petition quickly without an interview or a request for further evidence has no bearing on plaintiffs' claims. (Id.)

As the Court has denied plaintiffs' motion for additional discovery for the reasons stated above, it is unnecessary to address these additional arguments brought by defendants.

## CONCLUSION

For the reasons stated above, the Court denies plaintiffs' motion for discovery.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       March 13, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York

18