JOSEPH H. HUNT
Assistant Attorney General
DAVID L. ANDERSON
United States Attorney
ALEXANDER K. HAAS, SBN 220932
Branch Director
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
  P.O. Box 883
  Washington, D.C. 20044
  Telephone:  (202) 305-7664
  Facsimile:  (202) 616-8470
  Email: joshua.kolsky@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.* | Case No. 3:19-cv-04975-PJH |
| Plaintiffs, | **REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | Date: Hearing Vacated |
| Defendants. | Courtroom: 3 |
| | Judge: Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

I.     Plaintiffs Fail to Establish that They Have Article III Standing and Fall Within the
       Relevant Zone of Interests ................................................................. 1

II.    Plaintiffs Fail to State a Claim that the Rule conflicts with the INA ................................. 2

       A.    The Ninth Circuit's Stay of this Court's Preliminary Injunction Confirms that the
             Rule is Consistent with the INA ................................................................. 2

       B.    Additional Reasons to Dismiss Count One ................................................................. 4

III.   Plaintiffs Fail to State a Claim that the Rule Conflicts with § 504 of the
       Rehabilitation Act ................................................................. 6

IV.    Plaintiffs Fail to State a Claim that the Rule Strips Their Discretion to Determine
       Eligibility for Benefits under PRWORA ................................................................. 8

V.     Plaintiffs Fail to State a Claim that the Rule is Arbitrary or Capricious ......................... 8

       A.    Plaintiffs Offer No Basis for this Court to Depart from the Ninth Circuit's Rulings
             in this Case ................................................................. 8

       B.    DHS Reasonably Concluded That the Rule Will Promote Self-Sufficiency .............. 10

       C.    Plaintiffs Fail to Allege A Claim Based on DHS's Statement Regarding Public
             Charge Bonds ................................................................. 11

       D.    The Rule Retains the Totality of the Circumstances Standard ................................... 12

VI.    Plaintiffs Fail to State a Claim that the Rule Violates Equal Protection ......................... 13

CONCLUSION ................................................................. 15

i

## TABLE OF AUTHORITIES

**Cases**

*Center for Biological Diversity v. Zinke,*
   900 F.3d 1053 (9th Cir. 2018) ................................................................. 9

*Clarke v. Sec. Indus. Ass'n,*
   479 U.S. 388 (1987) ................................................................................ 2

*Cook Cty., Illinois v. Wolf,*
   No. 19-6334, 2020 WL 2542155 (N.D. Ill. May 19, 2020) .................... 15

*East Bay Sanctuary Covenant v. Trump,*
   950 F.3d 1242 (9th Cir. 2020) ........................................................... 3, 9

*Fiallo v. Bell,*
   430 U.S. 787 (1977) ......................................................................... 13, 14

*Fred Meyer Stores, Inc. v. NLRB,*
   865 F.3d 630 (D.C. Cir. 2017) ................................................................. 9

*Gresham v. Azar,*
   950 F.3d 93 (D.C. Cir. 2020) ................................................................... 9

*Harisiades v. Shaughnessy,*
   342 U. S. 580 (1952) .............................................................................. 14

*In re Zermeno-Gomez,*
   868 F.3d 1048 (9th Cir. 2017) ................................................................. 3

*Knutzen v. Eben Ezer Lutheran Hous. Ctr.,*
   815 F.2d 1343 (10th Cir. 1987) ............................................................... 7

*Lewis v. Thompson,*
   252 F.3d 567 (2d Cir. 2001) ................................................................... 10

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) ................................................................................ 2

i

*Mark H. v. Hamamoto*,

    620 F.3d 1090 (9th Cir. 2010) ................................................................ 6

*Matter of Harutunian*,

    14 I. & N. Dec. 583 (BIA Feb. 28, 1974) .............................................. 14

*Nutritional Health All. v. FDA*,

    318 F.3d 92 (2d Cir. 2003)....................................................................... 7

*Pers. Adm'r of Massachusetts v. Feeney*,

    442 U.S. 256 (1979)............................................................................... 13

*Rajah v. Mukasey*,

    544 F.3d 427 (2d Cir. 2008)................................................................... 14

*San Francisco v. USCIS*,

    944 F.3d  (9th Cir. 2019) ............................................................... *passim*

*Trump v. Hawaii*,

    138 S. Ct. 2392 (2018)...................................................................... 13, 14

*United States Army Corps of Engineers v. Hawkes Co.*,

    136 S. Ct. 1807 (2016).......................................................................... 12

*Washington v. Trump*,

    847 F.3d 1151 (9th Cir. 2017) .............................................................. 15

*Whitmore v. Ark.*,

    495 U.S. 149 (1990)................................................................................. 1

*Wong v. Regents of the Univ. of Cal.*,

    192 F.3d 807 (9th Cir. 2002) .................................................................. 6

**Statutes**

5 U.S.C. § 701(a)(2) ..................................................................................... 12

8 U.S.C. § 1182(a)(4)....................................................................... 5, 7, 11, 14

8 U.S.C. § 1182(s) .......................................................................................... 5

8 U.S.C. § 1183............................................................................................. 12

ii

8 U.S.C. § 1255 .................................................................................................. 14

8 U.S.C. § 1601 .................................................................................................. 11

29 U.S.C. § 794(a) ............................................................................................... 7

**Regulations**

64 Fed. Reg. 28689 (May 26, 1999) ................................................................... 10

83 Fed. Reg. 51114 (Oct. 10, 2018) ............................................................... 1, 12

84 Fed. Reg. 41292 (Aug. 14, 2019) ........................................................... *passim*

*State of Cal. v. DHS*, No. 19-4975-PJH
Reply in Supp. of Motion to Dismiss

## I.   Plaintiffs Fail to Establish that They Have Article III Standing and Fall Within the Relevant Zone of Interests

The Complaint does not include a sufficient, non-speculative allegation of injury.[1] In their response, Plaintiffs largely rely on injury theories that hinge on independent decisions of aliens which *may*, collectively, have down-stream economic effects on States. First, Plaintiffs claim that the Rule will cause aliens to minimize use of federal benefits, and thus rely more on State benefits. But as noted in the motion to dismiss ("Motion"), Plaintiffs assert that aliens do not meaningfully distinguish between federal and State benefits, and that the Rule will discourage reliance on State benefits as well. *See also* Opp'n at 7 (arguing the Rule "chill[s] [aliens] from participation in State-funded public benefits programs."). And even if certain aliens do turn to State services, Plaintiffs suffer injury only if they are subject to a net financial harm. Plaintiffs must show that any cost increase exceeds the amount they would save from (i) the Rule's exclusion of aliens that would have otherwise resided in the Plaintiff States and consumed State resources, and (ii) any disenrollment in State benefits due to the Rule. Plaintiffs do not allege this type of net harm, much less allege that it is "certainly impending." *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990).

Plaintiffs also claim that the Rule will result in decreased federal funds to the States (*e.g.*, Medicaid funds). Opp'n, at 3. But as noted in the Motion, Plaintiffs do not allege that they reap any profit from these federal funds. Additionally, this injury theory likewise fails to account for cost savings. Plaintiffs pay a portion of Medicaid expenses, and although DHS predicted that States would incur some costs, it also estimated that the Rule would decrease state benefit outlays by several billion dollars. *See* 83 Fed. Reg. 51114, 51228 (Oct. 10, 2018) ("NPRM"). Plaintiffs then claim that they must bear operational costs to adjust certain State programs to account for the Rule. Opp'n at 3-4. These bureaucratic expenditures are not sufficient for standing, *see* Mot. at 6 (citing cases); if they were, then a State could effectively manufacture standing to challenge virtually *any* change in federal law or policy.

In any event, even if Plaintiffs establish standing, they must also demonstrate that "the

---

[1] Because the Ninth Circuit's stay opinion controls here, Defendants concede that in addition to resolving various merits arguments, it resolves Defendants' standing arguments. However, Defendants reiterate the standing arguments here to preserve them for appeal.

*State of Cal. v. DHS*, No. 19-4975-PJH
Reply in Supp. of Motion to Dismiss

injury [they] complain[] of . . . falls within the 'zone of interests' sought to be protected by the" public charge inadmissibility "statutory provision." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990). Unlike aliens who are directly subject to exclusion under this provision, Plaintiffs' stated "interests are . . . marginally related to or inconsistent with the purposes implicit in the statute." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). Indeed, although the public charge inadmissibility provision seeks to conserve federal and State resources by excluding aliens who are likely to consume public benefits, the States here seek to conserve their resources by *enhancing* reliance on federal resources. Plaintiffs' interest here is practically the inverse of the interest sought to be protected by the public charge inadmissibility provision.

In response, Plaintiffs argue that the Immigration and Nationality Act ("INA") contemplates State involvement in issues pertaining to a public charge inadmissibility determination, since States may enforce affidavits of support, and States administer public benefits relevant to public charge inadmissibility determinations. But the question is not whether States have any connection at all to public charge inadmissibility determinations, but rather whether "the injury [they] complain[] of" is one for which Congress would have intended to authorize suit. *Lujan*, 497 U.S. at 883. Even if States may enforce the provisions governing an affidavit of support under section 213A of the INA to ensure that sponsors provide support to the sponsored alien and that sponsors reimburse benefits-granting agencies for any means-tested public benefits sponsored aliens receive, that does not mean States can bring the claims at issue here (which seek to conserve State benefits by *increasing* reliance on federal benefits, rather than private assistance). Plaintiffs also contend that the Rule may affect the States, thus bringing them into the relevant zone of interests. But this argument assumes that any injured party is necessarily within the zone of interests of the relevant provision, improperly conflating the Article III inquiry and the zone of interests inquiry. For the reasons set forth here, and in the Motion, there is no indication that the public charge inadmissibility provision sought to protect States from the injuries at issue here.

## II.     Plaintiffs Fail to State a Claim that the Rule conflicts with the INA

### A.     The Ninth Circuit's Stay of this Court's Preliminary Injunction Confirms that the Rule is Consistent with the INA

*State of Cal. v. DHS*, No. 19-4975-PJH
Reply in Supp. of Motion to Dismiss

Relying on *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242 (9th Cir. 2020), Plaintiffs argue that the Ninth Circuit's stay opinion in this case "does not warrant dismissal" of Plaintiffs' claims because the opinion was issued by a motions panel.  Opp'n at 9. The *East Bay* decision addresses only whether a Ninth Circuit merits panel may reconsider a decision by a Ninth Circuit motions panel. 950 F.3d at 1263 (discussing "[r]econsideration of a motions panel's decision by a merits panel").  It does not suggest that a district court may rule on questions of law contrary to a published, precedential Ninth Circuit decision simply because the decision was issued by a motions panel. It may not. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017) ("we have unequivocally stated that a published decision constitutes binding authority and must be followed unless and until it is overruled by a body competent to do so"); *id.* (it is "clear error for a district court to disregard a published opinion of this court"). As Plaintiffs note, a stay opinion "should not, and does not, forever bind the merits of the parties' claims," Opp'n at 9, but that point has little relevance to the questions of law decided in the stay opinion. Those pronouncements control the resolution of Defendants Motion as to Count One. But even if Plaintiffs were correct that the Ninth Circuit's decision is not binding, it at least would be persuasive. *See East Bay*, 950 F.3d at 1265 ("we treat the motions panel's decision as persuasive, but not binding").[2]

Plaintiffs then suggest that the Ninth Circuit was wrong on the merits. Their basic tactic is to offer quotes from this Court's prior opinion which are contrary to the Ninth Circuit's opinion. Opp'n at 9-10. But of course, those are precisely the rulings with which the Ninth Circuit disagreed when it stayed the injunction. *See, e.g.*, *San Francisco v. USCIS*, 944 F.3d 796 (9th Cir. 2019) ("Unlike the district courts, we are unable to discern one fixed understanding of 'public charge' that has endured since 1882."); *id.* at 797 ("Both district courts found it significant that Congress twice considered, but failed to enact, a definition of "public charge" that is similar to the definition adopted in the Final Rule. . . . *We disagree*." *Id.* at 797 (emphasis added)).

---

[2]  Plaintiffs' observation that the stay decision was issued "without oral argument, on an abbreviated timeline, with limited briefing, and without the benefit of a complete record," Opp'n at 9, does not establish a basis to disregard the published opinion. Moreover, it overlooks that the Court of Appeals' lengthy opinion addressed and disagreed with the very reasoning that Plaintiffs now urge this Court to reaffirm. Plaintiffs also forget that no "complete record" is needed to adjudge the purely legal questions in Count One.

*State of Cal. v. DHS*, No. 19-4975-PJH
Reply in Supp. of Motion to Dismiss

Plaintiffs then offer various criticisms of the Ninth Circuit's opinion, none of which is availing. First, Plaintiffs argue that the Court of Appeals "failed to address the core interpretative question of whether it is reasonable for DHS to redefine 'public charge' to mean an immigrant who receives certain supplemental, temporary public benefits for several months in any three-year period (it is not)." Opp'n at 10. That argument assumes that the Ninth Circuit was unaware of the Rule's definition of "public charge." But that is, of course, central to the case and precisely what the Ninth Circuit was considering. And its opinion reflects recognition that the Rule defined "public charge" by reference to specified public benefits received for a certain period of time in any 36-month period. 944 F.3d at 782-84.

Second, Plaintiffs argue that the Ninth Circuit "erroneously concluded that it is reasonable for the Rule to allow consideration of supplemental, non-cash benefits" that in Plaintiffs' view are insignificant. Opp'n at 10. But Plaintiffs do not explain specifically why they believe that ruling was erroneous other than by asserting that they believe the potential amount of received benefits could be too small in some hypothetical cases. As the Ninth Circuit held, "it is a short leap in logic for DHS to go from considering in-cash public assistance to considering both in-cash and in-kind public assistance." 944 F.3d at 800. And DHS's "considerable discretion" over public charge inadmissibility determinations, *id.* at 799, certainly includes the authority to determine what degree of public assistance is sufficient to render someone a public charge.

Third, Plaintiffs reiterate that "Defendants may not pour any meaning into the term public charge." Opp'n at 10. That is a red herring—an argument neither advanced by Defendants nor upheld by the Ninth Circuit. What the Court of Appeals affirmed was that "the phrase 'public charge' is ambiguous," 944 F.3d at 798, and that "DHS's interpretation of 'public charge' is a permissible construction of the INA," *id.* at 799. Accordingly, Plaintiffs have failed to provide any basis for this Court to deviate from the Ninth Circuit's ruling on questions of law that are dispositive here.  Count One should be dismissed.

### B.    Additional Reasons to Dismiss Count One

Plaintiffs mischaracterize Defendants' additional arguments showing that the Rule is consistent with the public charge inadmissibility provision in the INA. Mot. at 9-10. Neither the

4

battered-alien exception nor the affidavit-of-support provision *redefined* or *amended* the term "public charge" in 8 U.S.C. § 1182(a)(4). That would depend on "public charge" having had a fixed, unambiguous meaning beforehand. As the Ninth Circuit held, that is not the case. *San Francisco*, 944 F.3d at 796 ("Unlike the district courts, we are unable to discern one fixed understanding of 'public charge' that has endured since 1882.").

Plaintiffs argue that the alien-immigrant provision, 8 U.S.C. § 1182(s), refers "broadly to 'benefits.'" Opp'n at 10. It is not clear how this undermines Defendants' argument, which is that such benefits must *otherwise* be presumed intended for consideration in a public charge analysis. Plaintiffs then argue that Congress merely wanted to provide assurance to vulnerable immigrants, who would be "exempt from public charge admissibility assessments." *Id.* at 10-11 (citing 8 U.S.C. § 1182(a)(4)(E)). But that assurance was only necessary because such benefits could *otherwise* have been considered in a public charge inadmissibility determination.

Plaintiffs respond to the affidavit of support requirement, 8 U.S.C. § 1182(a)(4)(C), 1182(a)(4)(D), and 1183a, by arguing that "this provision does not define or list the means-tested benefits to which it applies." Opp'n at 11. But that is immaterial, as the statute requires reimbursement for "*any* means-tested public benefit" that the government provides to the sponsored alien during the period of enforceability, *id.* § 1183a(b)(1)(A) (emphasis added); *see also id.* § 1183a(a). Plaintiffs argue that the affidavit-of-support provision is evidence that Congress assumed "that some immigrants would be expected to access public benefits after admission." Opp'n at 11. But while Congress anticipated potential usage of means-tested public benefits and tried to prevent it, it hardly follows that Congress endorsed such benefits usage. Passage of an anti-fraud statute, for example, may anticipate that some fraud will occur, but it hardly condones that fraud—quite the opposite. In this case, Congress provided that the mere *possibility* that an alien might obtain unreimbursed, means-tested public benefits in the future was sufficient to render that alien inadmissible, regardless of the alien's other circumstances.

Next, Plaintiffs contend that, although the Rule says it adopts a totality of circumstances analysis, it does not do so. Opp'n at 11. But Defendants' argument is more than just "the phrase appears in the Rule." *Id.* The Rule provides, in the clearest terms: "The presence of a single positive

5

or negative factor, or heavily weighted negative or positive factor, *will never*, on its own, create a presumption that an applicant is inadmissible . . . or determine the outcome of the . . . inadmissibility determination." Rule at 41295. Defendants explained at length, Mot. at 10-12, how this was more than just ipse dixit. In response, Plaintiffs only suggest that some negative factors are "potentially determinative." Opp'n at 11-12. That is not enough to allege plausibly that the Rule departs from a totality of the circumstances approach, much less that it violates the INA.

Finally, Plaintiffs concede that the Rule does not violate the INA by imposing a public benefits condition to applications and petitions for extensions or changes of status. *Compare* Mot. at 12-13 *with* Opp'n at 12-13. Instead, they argue that "the Rule's confirmed application to nonimmigrants seeking visa extensions or to change their status further expands the scope of individuals within the United States, such as international students, who are likely to be subject to the Rule's chilling effects." Opp'n at 12-13. But even assuming that nonimmigrants do use fewer benefits because of the public benefits condition, Plaintiffs identify no reason why the public benefits condition is unlawful. Any "chilling effects" felt by these nonimmigrants is therefore not a basis for striking down the Rule as contrary to law.

### III. Plaintiffs Fail to State a Claim that the Rule Conflicts with § 504 of the Rehabilitation Act

None of Plaintiffs' arguments undermine the reasoning of both this Court and the Ninth Circuit as described in Defendants' Motion. Mot. at 15-16. First, Plaintiffs contend that the Rule violates § 504 because it does not consider whether an alien's disability can be reasonably accommodated. Opp'n at 13-14. However, the burden is on Plaintiffs and not Defendants to demonstrate both that a reasonable accommodation exists, and that such an accommodation would enable Plaintiffs to meet the essential eligibility requirements of the program, and they have not even attempted to meet that burden. *Wong v. Regents of the Univ. of Cal.,* 192 F.3d 807, 816-17 (9th Cir. 2002). Even if Plaintiffs had alleged any possible accommodations, those accommodations would most likely require Defendants to transform the definition of public charge and the factors considered. "Reasonable accommodation does not require an organization to make fundamental or substantial alterations to its programs." *Mark H. v. Hamamoto*, 620 F.3d 1090,

6

1098 (9th Cir. 2010).

Second, Plaintiffs contend that § 504 contains a more specific prohibition on disability discrimination than the INA's requirement that Defendants consider health as a factor in public charge inadmissibility determinations. Plaintiffs' characterization of the scope of these statutes is facially unreasonable. Section 504 applies to "any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service," 29 U.S.C. § 794(a), whereas the INA directs "health" to be considered specifically in public charge inadmissibility determinations for a defined set of aliens, 8 U.S.C. § 1182(a)(4)(B). The INA was also amended to include the health factor in the public charge ground of inadmissibility more than 20 years after the passage of the Rehabilitation Act. A specific, later statutory command, such as the INA's, supersedes section 504's general proscription to the extent the two are in conflict, which they are not. *See San Francisco*, 944 F.3d at 800; *see also*, *e.g.*, *Knutzen v. Eben Ezer Lutheran Hous. Ctr.*, 815 F.2d 1343, 1353 (10th Cir. 1987); *Nutritional Health All. v. FDA*, 318 F.3d 92, 102 (2d Cir. 2003).[3]

Third, Plaintiffs argue that an alien's disability will be dispositive of whether he or she will be found inadmissible on public charge grounds because many disabled aliens will use Medicaid for 12 or more months out of a 36-month period. Opp'n at 14. First, this argument confuses the definition of "public charge" with the determination of whether an alien is likely to become a public charge in the future. The latter determination is based on a totality of the circumstances analysis in which past receipt of benefits is only one factor to be considered. Negative factors such as past receipt of public benefits can be outweighed by positive factors.[4] Second, *all* applicant aliens are subject to the same public charge determination wherein their individual attributes,

---

[3] For the same reasons, Plaintiffs' argument that the Rule independently conflicts with DHS's own regulations concerning disability is meritless. Opp'n at 13. Also, as DHS explained in the Rule, DHS interprets those regulations to be consistent with the Rule. *See* 84 Fed. Reg. 41292, 41409 (Aug. 14, 2019) ("Rule").

[4] Plaintiffs are also incorrect that a person's disability "automatically assigns" them a negative factor. Opp'n at 14. The Rule explicitly states that if "there is no indication that such disability makes the alien more likely to become a public charge, the alien's disability will not be considered an adverse factor in the inadmissibility determination." Rule at 41368.

7

including past receipt of public benefits, are carefully weighed in the totality of the circumstances. Therefore there is no improper "double-counting" of factors based on an individual's disability. Thus there is no evidence that disabled persons are likely to be found inadmissible on public charges grounds *solely* because of their disability under the totality of the circumstances determination. Only those aliens who are likely to receive public benefits above the threshold are inadmissible as public charges under the Rule.

### IV.     Plaintiffs Fail to State a Claim that the Rule Strips Their Discretion to Determine Eligibility for Benefits under PRWORA

Plaintiffs admit that the Rule does not actually alter eligibility criteria or prevent states from exercising their statutory authority to extend certain public benefits to certain aliens. Opp'n at 15. The Court therefore need not inquire any further to dismiss this claim. However, even if Plaintiffs had not made this admission, it is clear that the States' allegation rests not on the legal effect of the Rule, but on eligible aliens' choice not to use benefits the States make available. *See id.* ("this group faces particularly harsh choices under the Rule."). Even taking Plaintiffs' allegations concerning chilling effects as true for the purposes of this argument only, the Rule still in no way prohibits States from extending benefits eligibility to any group permitted by PRWORA, nor does it render any aliens ineligible to receive those benefits. The lack of any actual conflict between the Rule and the harm Plaintiffs allege is particularly clear in their claim that the Rule impacts States' authority to provide benefits, such as CHIP, that are excluded from the Rule. *Id.* It is clearly impossible for the Rule to interfere with States' legal authority to provide those benefits or aliens' legal entitlement to receive them when the Rule does not even apply to those benefits. Whether or not the Rule makes state benefit programs "more difficult to administer" has no bearing on whether the Rule is contrary to law because it conflicts with a statutory grant of authority in PRWORA. To the extent Plaintiffs argue they are enforcing the intent of Congress in enacting PRWORA, they have no standing to bring such claims.

### V.     Plaintiffs Fail to State a Claim that the Rule is Arbitrary or Capricious

#### A.  Plaintiffs Offer No Basis for this Court to Depart from the Ninth Circuit's Rulings in this Case

*State of Cal. v. DHS*, No. 19-4975-PJH
Reply in Supp. of Motion to Dismiss

Plaintiffs concede that the Ninth Circuit has already rejected their argument that DHS failed to adequately consider costs. Opp'n at 17 (noting the Ninth Circuit's ruling that DHS "addressed at length the costs and benefits associated with the Rule"). Nevertheless, Plaintiffs insist that this Court should depart from that ruling. But as discussed above, the Ninth Circuit's published opinion is binding on this court. And even if it were not, it would at least be persuasive. *See East Bay*, 950 F.3d at 1265 (decision by motions panel is "persuasive" on later merits panel). Just as a "later merits panel should not 'lightly overturn a decision made by a motions panel,'" *id.* at 1262, this Court should not lightly rule contrary to the opinion in *San Francisco*.

Critically, Plaintiffs offer no persuasive justification for deviating from the Ninth Circuit's opinion. Instead, they simply ignore the Circuit's lengthy analysis of the costs issue, *see San Francisco*, 944 F.3d at 801-04, and they fail to identify any factual or legal error in the ruling. In particular, Plaintiffs' vague arguments that DHS must "do more than identify significant comments" and must "grapple with contrary evidence," Opp'n at 17, fail to show any deficiency in the Ninth Circuit's extensive analysis concluding that DHS's response was sufficient.[5]

Plaintiffs also argue that DHS "failed to consider public health consequences and failed to adequately explain why it rejected prior agency conclusions regarding those consequences." Opp'n at 17. But, again, Plaintiffs do not address any of the Ninth Circuit's reasons for rejecting that argument. *See San Francisco*, 944 F.3d at 804-05. As the Ninth Circuit explained, "DHS not only addressed these concerns directly, it changed its Final Rule in response to the comments." *Id.* at 805. And the Ninth Circuit further found that DHS acknowledged its change in policy and

---

[5] None of the decisions cited by Plaintiffs on this issue suggest any error in the *San Francisco* opinion, or any deficiency in the Rule. In *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630 (D.C. Cir. 2017), unlike here, the agency "totally ignore[d] facts in the record and misconstrue[d] the findings of the ALJ." *Id.* at 638. The "crucial" fact in *Gresham v. Azar*, 950 F.3d 93 (D.C. Cir. 2020) was "that the Medicaid statute identifies its primary purpose" and the court concluded that the agency head "disregarded this statutory purpose in his analysis." *Id.* at 104. Nothing of the sort is alleged here. And in *Center for Biological Diversity v. Zinke*, 900 F.3d 1053, 1068 (9th Cir. 2018), the court found that the agency had ignored contrary evidence. In contrast, here, as the Ninth Circuit found, "DHS addressed at length the costs and benefits" and explained why those costs did not justify abandoning the Rule. *See San Francisco*, 944 F.3d at 801-04.

*State of Cal. v. DHS*, No. 19-4975-PJH
Reply in Supp. of Motion to Dismiss

1     adequately explained the reasons for it. *Id*. at 804-05. Those rulings control the outcome here.[6]

2           **B.  DHS Reasonably Concluded That the Rule Will Promote Self-Sufficiency**

3           Next, Plaintiffs argue that "DHS's stated justifications for the Rule—reducing incentives

4     to immigrate and promoting self-sufficiency—fail to provide a satisfactory explanation for its

5     action . . . because those directly subject to a public charge determination . . . are largely ineligible

6     for the newly included federal benefits, and remain barred once admitted into lawful status for an

7     additional five-year waiting period." Opp'n at 17-18. But those aliens can *become* eligible for

8     public benefits once they adjust status.  And aliens can reasonably be expected to base their present

9     decisions on the availability of future benefits. *Cf. Lewis v. Thompson*, 252 F.3d 567, 583-84 (2d

10    Cir. 2001) (Congress could reasonably "believe that some aliens would be less likely to hazard the

11    trip to this country if they understood that they would not receive government benefits"). Indeed,

12    this is exactly the reason Congress specified for altering the public charge inadmissibility

13    determinations (by altering affidavit-of-support requirements) in PRWORA.  *See* 8 U.S.C. §§

14    1601, 1183a.  By making clear that receipt of such benefits will be considered as part of the totality

15    of the circumstances determination of the public charge ground of inadmissibility, the Rule helps

16    "ensure that aliens coming to or opting to stay in the United States permanently are self-sufficient."

17    Rule at 41317.[7]

18          Also, the fact that Congress authorized some immigrants to utilize the public benefits

19    considered by the Rule does not make the Rule irrational. Opp'n at 18. All public assistance is

20    authorized by law. For instance, under the 1999 Field Guidance, an alien could be deemed a public

---

[6] Plaintiffs contend that interagency communications "may provide information that should be considered prior to resolution" of this claim. Opp'n at 17 n.7. But as Plaintiffs' implicitly recognize, the relevant question for this claim is whether the agency "adequately explain[ed]" its decision, *id*., which is determined by examining the agency's explanation in the Rule. What other agencies may have said about this issue has no relevance to whether DHS adequately explained its decision.

[7] For the same reason, there is no merit to Plaintiffs' argument that the Rule primarily impacts individuals already in the United States "and thus the purpose to 'minimize the incentive of aliens to immigrate' is inapposite," Opp'n at 19. As noted, the Rule will also impact aliens abroad who are considering whether to seek admission to the United States to obtain public benefits.

charge if he or she were likely to be primarily dependent on cash assistance for income maintenance or institutionalized, even though those forms of support were authorized.  64 Fed. Reg. 28689 (May 26, 1999).  That Congress provided a safety net does not mean it intended to admit aliens who are likely to require it.

Plaintiffs also contend that the Rule is arbitrary and capricious because it provides for immigration officials to take into account benefits that Plaintiffs believe "enable self-reliance." Opp'n at 18. For purposes of the public charge inadmissibility ground, Congress's intent is "that aliens should be self-sufficient before they seek admission or adjustment of status," not that they should someday attain self-sufficiency by drawing on public resources to improve their financial condition. Rule at 41308; *see* 8 U.S.C. § 1601. In other words, the relevant question for purposes of the public charge inadmissibility statute is whether the alien "is likely at any time to become a public charge," 8 U.S.C. § 1182(a)(4), not whether he or she is likely at any time to become self-sufficient. Accordingly, DHS's explanation regarding how the Rule will advance self-sufficiency easily meets the standards of the APA.

To the extent that Plaintiffs suggest the Rule should not be applied to students, Opp'n at 18 (citing Compl. ¶ 268), Congress has *required* DHS to determine whether aliens seeking admission are likely at any time to become a public charge, without any exception for students. 8 U.S.C. § 1182(a)(4). Moreover, the Rule explains that "USCIS would not consider it to be a heavily weighted negative factor if a student, applying for adjustment of status for a valid basis, is not working because she or he lacks employment authorization." Rule at 41437-38.

Plaintiffs also claim the Rule is "irrational" because it may cause individuals, including U.S. citizens, to disenroll from public benefits based on a mistaken belief that they are subject to the Rule. Opp'n at 19. But the Ninth Circuit rejected that argument following a lengthy discussion, concluding that "it was sufficient—and not arbitrary and capricious—for DHS to consider whether, in the long term, the overall benefits of its policy change will outweigh the costs of retaining the current policy." *San Francisco*, 944 F.3d at 801-04.

### C.  Plaintiffs Fail to Allege A Claim Based on DHS's Statement Regarding Public Charge Bonds

11

Plaintiffs also argue that DHS failed to explain its statement that it generally is not disposed to favorably exercise discretion to allow submission of a public charge bond if an alien has at least one heavily weighted negative factor. Opp'n at 9. As an initial matter, Plaintiffs cannot challenge under the APA a statement about how DHS may exercise its discretion at some future point in time, both because that statement is not a final agency action, *United States Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (to be final, the action "must not be of a merely tentative or interlocutory nature" and "must be one by which rights or obligations have been determined, or from which legal consequences will flow"), and because the question whether to issue a public charge bond is a matter committed to agency discretion, 5 U.S.C. § 701(a)(2); *see also* Rule at 41451 ("The decision whether to issue a public charge bond is at the sole discretion of USCIS; there is no right or entitlement to a public charge bond."); 8 U.S.C. § 1183.

In any event, DHS did explain its reasoning. "Ultimately, the purpose of the public charge bond is to allow DHS to admit an alien who is inadmissible as likely to become a public charge, but who warrants a favorable exercise of discretion." NPRM at 51221. "DHS believes that offering a public charge bond in the adjustment of status context would generally only be warranted in limited circumstances in which the alien has no heavily weighed negative factors, but the presence of such factors would not automatically preclude DHS from offering a public charge bond." *Id*. This is because "heavily weighed negative factors" are "particularly indicative of the likelihood that an alien would become a public charge." *Id*.; *see also* Rule at 41450.

### D.  The Rule Retains the Totality of the Circumstances Standard

Plaintiffs further claim that it was arbitrary and capricious for DHS to have identified factors relevant to the public charge analysis that may overlap in some instances, Opp'n at 20, but the Court has already rejected that argument. *See* PI Order, ECF No. 120, at 66. It is highly unlikely that any evidence-based determination could be made without considering different kinds of evidence that would overlap in their tendency to demonstrate whether an individual is, or is not, likely at any time to become a public charge. Moreover, the Rule explains that overlapping factors do not necessarily carry more weight. *See* Rule at 41397 ("Multiple factors operating together will carry more weight to the extent those factors in tandem show that the alien is more or less likely

12

than not to become a public charge."). Accordingly, it is utter speculation for Plaintiffs to argue that "[i]n practice, it would be nearly impossible for an applicant to overcome [a particular] heavily weighted negative factor" and that certain factors will be "determinative." Opp'n at 20. The Rule could not be more clear that it retains the totality of the circumstances approach under which Executive Branch officials make individualized determinations. *See* Rule at 41295 ("The presence of a single positive or negative factor, or heavily weighted negative or positive factor, will never, on its own, create a presumption that an applicant is inadmissible . . . or determine the outcome of the . . . inadmissibility determination. Rather, a public charge inadmissibility determination must be based on the totality of the circumstances presented.").[8]

### VI.     Plaintiffs Fail to State a Claim that the Rule Violates Equal Protection

To establish an equal protection claim, Plaintiffs must show that DHS adopted the Rule because of a disproportionate impact upon a protected class, rather than because of the detailed justifications set forth in the Rule's preamble (spanning over 200 pages). *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). Aside from a conclusory allegation of discriminatory intent, Plaintiffs rely only on generic statements pertaining to immigration with no express connection to the Rule. This is insufficient.

As a threshold matter, Supreme Court "cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). Thus, with respect to immigration policy, a highly "deferential standard of review" applies because "it is not the judicial role in cases of this sort to probe and test the justifications of" the executive branch. *Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018). "A conventional application of" this standard asks "only whether the policy is facially legitimate and bona fide." *Id*. at 2420. In

---

[8] Plaintiffs' assertion that "[a]n examination of the complete administrative record is needed in order to determine whether Defendants' claim that the Rule will be a true multi-factor test," Opp'n at 20, is no basis on which to deny Defendants' motion. The administrative record – which predates the implementation of the Rule – necessarily does not contain information about specific public charge inadmissibility determinations pursuant to the Rule and therefore would not show how the Rule functions "in practice" in the manner Plaintiffs suggest, *id*.

13

response, Plaintiffs argue that *Hawaii*'s narrow standard applies only in the national security context and does not apply to cases involving aliens in the United States. That is incorrect. The *Hawaii* decision explained that the deferential standard was appropriate for cases involving "the admission and exclusion of foreign nationals," an area which is "largely immune from judicial control." *Id*. at 2418. There is no question that this case – which challenges DHS's interpretation of the public charge *inadmissibility* statute – directly implicates the federal government's policies regarding the admission of aliens. The fact that an alien seeking adjustment of status may be physically present in the United States is irrelevant because "[i]t is a well established fact that an applicant for adjustment of status under Section 245 of the Act is in the same posture as though he were an applicant before an American consular officer abroad seeking issuance of an immigrant visa for the purpose of gaining admission to the United States as a lawfully permanent resident." *Matter of Harutunian*, 14 I. & N. Dec. 583, 589 (BIA Feb. 28, 1974). Regardless of the location of the alien, DHS's determinations under 8 U.S.C. § 1182(a)(4) are determinations about *admissibility*, which is required for applicants seeking adjustment of status under 8 U.S.C. § 1255.[9]

Furthermore, the Supreme Court in *Hawaii* expressly stated that the deferential standard applies "across different contexts and constitutional claims." 138 S. Ct. at 2419. For authority, the Supreme Court cited *Rajah v. Mukasey*, 544 F.3d 427, 438-39 (2d Cir. 2008), a case involving an equal protection challenge brought by aliens *inside* the country. The Court also cited *Fiallo*, a paternity/legitimacy case in which the Court had rejected the same type of reasoning as advanced by Plaintiffs here. *See Fiallo*, 430 U.S. at 796 (rejecting characterization of "prior immigration cases as involving foreign policy matters and congressional choices to exclude or expel groups of aliens that were specifically and clearly perceived to pose a grave threat to the national security . . . or to the general welfare of this country"). And the Supreme Court quoted its prior ruling that "*any* policy toward aliens is vitally and intricately interwoven with contemporaneous policies in

---

[9] Plaintiffs' belief that the physical location of the alien determines the standard of review cannot be squared with the Supreme Court's explanation that judicial review for admission cases arises in situations where the government action "burdens the constitutional rights of a U.S. citizen," *Hawaii*, 138 S. Ct. at 2419, not based on where the alien may be located. Absent burdens on citizens' constitutional rights, there is no judicial review at all. *Id*.

14

regard to the conduct of foreign relations [and] the war power." *Id.* (quoting *Harisiades v. Shaughnessy*, 342 U. S. 580, 588-89 (1952)) (emphasis added).

Plaintiffs fail to state an equal protection claim under the *Hawaii* standard, or even a less deferential standard. Plaintiffs rely on a string of policies and statements by the President which have no express connection to the Rule, and which say nothing of why the decision-maker—here, DHS—instituted the Rule. *See* Opp'n at 23. Plaintiffs instead contend that the President, as the chief executive, is a decision-maker. But Plaintiffs' authority is inapposite. For instance, Plaintiffs rely on *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017) to argue that statements by the President support a finding of discriminatory intent, but that case involved a challenge to an Executive Order issued by the President, not a rulemaking by an executive branch agency. Plaintiffs also contend that the President pushed for the Rule. Opp'n at 23. But there is no well-pled allegation that the President pushed for the Rule in particular due to any discriminatory animus. Additionally, there is no allegation that *DHS* designed and implemented the Rule due to any discriminatory animus. Indeed, this inference is especially impermissible here in light of the extensive justifications for the Rule laid out in its preamble, along with the elaborate notice-and-comment process that culminated in the Rule's final design.

Finally, Plaintiffs cite to a recent decision in *Cook County, Illinois v. Wolf*, No. 19-6334, 2020 WL 2542155 (N.D. Ill. May 19, 2020). But the Court should not follow the reasoning in *Cook County*. There, the court found that (i) Plaintiffs had sufficiently alleged that certain White House officials made general remarks—unrelated to the Rule—that the court had to accept as proof of animus at the motion to dismiss stage, and (ii) these White House individuals pushed for the Rule. *See id.* at *6-8. But this reasoning, and the arguments in Plaintiffs' response, share the same flaw: even if a court accepts that the plaintiffs have properly alleged animus in some form, there must still be an allegation tying this animus to the precise policy at issue here (the Rule). In *Cook County*, the court did not point to a well-pled allegation indicating that the Rule in particular was adopted with any discriminatory motive.  Plaintiffs' complaint here fares no better.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' complaint.

15

Dated: June 3, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ALEXANDER K. HAAS, SBN 220932
Branch Director

*/s/ Joshua Kolsky*
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar 993430
ERIC J. SOSKIN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
joshua.kolsky@usdoj.gov

*Attorneys for Defendants*

16